Laramore, Judge,
delivered the opinion of the court :
This is an action to recover additional interest on a refund of 1942 income taxes refunded in 1956.
The facts have been stipulated and briefly are as follows: On June 14,1943, plaintiff filed its income tax return for the calendar year 1942 reporting an income tax liability of $52,004.29. This tax was duly paid. Plaintiff timely filed its income tax return for the calendar years 1943 and 1944, showing an income tax liability in the amount of $6,638.46 for 1943, which was duly paid, and a net operating loss for the calendar year 1944.
On March 11, 1946, plaintiff filed a timely claim for refund of taxes paid for the calendar year 1942. However, said claim contained no allegation or reference to a loss carry-back from the year 1944.
On July 3, 1946, plaintiff timely filed a claim for refund of tax paid for the calendar year 1943, based on the net operating losses sustained in the calendar years 1944 and 1945. There was no allegation in this claim indicating that the 1944 net operating loss should be carried back to the tax year 1942.
On the date plaintiff filed its claim for refund for the calendar year 1943 it was not barred by the statute of limitations from filing a claim for refund for the calendar year 1942 based on its 1944 net operating loss.
Plaintiff’s claims for refund for the years 1942 and 1943 were partially allowed to the extent of $8,119.96 and $5,206.99, respectively, and were rejected, in part, by final letters of rejection dated August 16,1951. Refunds for both years were attributable to adjustments in the amount of plaintiff’s Head Office expenses and taxes, and the 1943 refund was also based on a net operating loss carry-back from the year 1945.
Plaintiff’s income tax returns for the years 1942, 1943, and 1944 were audited by the same revenue agent on several occasions.
Plaintiff, in an application dated June 23, 1952, and filed with the Commissioner of Internal Eevenue, requested the reopening and reconsideration of its 1942 and 1943 claims for refund. This application requested an additional refund *107 of 1942 taxes 'based, in part, on the net operating loss plaintiff sustained for the taxable year 1944.
The Commissioner of Internal Eevenue reconsidered the plaintiff’s claims for refund for the years 1942 and 1943 and granted additional refunds for the said years in the amounts of $26,959.17 and $1,431.47, respectively. No part of these refunds were attributable to plaintiff’s 1944 net operating loss. Plaintiff was advised that it had not filed a timely claim for refund of its 1942 taxes based on its 1944 net operating loss and that such a deduction was barred by the statute of limitations.
On August 10, 1954, after plaintiff was barred by limitations from instituting suit on its 1942 claim for refund, it filed a claim for refund alleging inter alia that it was entitled to a refund of its 1942 tax in the amount of $15,467.44 under section 3801(b) (6) of the Internal Eevenue Code of 1939, which was added thereto by section 211 of the Technical Changes Act of 1953, 67 Stat. 625. This claim for refund advised the District Director that (1) there had been a “determination” disallowing the plaintiff’s 1944 net operating loss carry-back as a deduction for the year 1943, which deduction should have been allowed if it had been properly claimed, but was not allowed for the year 1942; and (2) on July 3, 1946, the date that the plaintiff first erroneously maintained, in writing, that it was entitled to a deduction for the year 1943 because of its 1944 net operating loss, it was not barred from claiming said deduction for the year 1942.
Refund was granted plaintiff under section 3801 (b) of the Internal Revenue Code of 1939, as amended by the Technical Changes Act of 1953, supra, in the amount of $15,467.44, which was the amount plaintiff would have received under its claim for refund for 1942 had the 1944 net operating loss carry-back been allowed as a deduction for the year 1942. The Commissioner, in addition to the refund of tax, allowed, and plaintiff received, interest in the amount of $1,849.95 computed on the $15,467.44 at six percent per annum from August 10,1954 to August 7,1956, August 10,1954 being the date plaintiff filed its claim for refund under section 3801, supra.
*108 Plaintiff then in March of 1959 filed claim for refund requesting additional interest and said claim was denied.
The sole question we are called upon to answer is whether interest on the refund of $15,467.44 shall he computed from (a) August 10,1954, the date plaintiff filed claim for refund under section 3801, supra/ or (b) July 3, 1946, the date it filed a claim for refund alleging its net operating loss; or (c) the date or dates it overpaid its 1942 tax.
At the outset it is noted that plaintiff is not entitled, and plaintiff so agrees, to any tax refund for the taxable year 1943 attributable to its 1944 net operating loss. This is so because under section 122 of the Internal Revenue Code of 1939 it was required that said deduction for said losses be carried back two years to 1942.[1]
We think under the facts of this case that since the Commissioner of Internal Revenue was advised of plaintiff’s 1944 net operating loss prior to the time it was barred from amending its original 1942 claim for refund and before said claim had been finally rejected, the Commissioner was originally in error in not granting plaintiff refund on its 1942 tax because of said loss. In other words, while plaintiff in fact claimed the loss carry-back as a deduction against its 1943 tax, the same revenue agent who audited plaintiff’s returns for 1942, 1943, and 1944 knew that the loss should have been carried back two years to offset its 1942 tax. Cf. Youngstown Sheet & Tube Co. v. United States, 79 Ct. Cl. 683; 7 F. Supp. 290, cert. denied* 293 U.S. 599 (1934) Section 122 of the Internal Revenue Code requires this. Thus when the Commissioner received a claim for a carry-back to the first preceding taxable year (1943), it was accordingly his first duty to check the return for the second preceding taxable year (1942), particularly since a refund claim had been filed for that year, to determine whether there was any amount remaining over the net income of that year which would be applied to the first. We think that this would specifically advise the Collector of plaintiff’s claim *109 for a carry back for the year 1942. Cf. St. Joseph Lead Co. v. United States, 299 F. 2d 348 (2d Cir. 1962) and cases cited therein.
The fact that the Internal Kevenue Service learned of plaintiff’s 1944 net operating loss by examining claims and returns for years other than 1942 is of no consequence. In the case of Ryan v. Harrison, 146 F. Supp. 671 (N.D. Ill. 1956) the taxpayer filed a claim for refund for the wrong year (1945) based on a net operating loss (from the year 1946). There the court permitted an amendment of the claim to show the correct year even after the running of the statute of limitations. The court therein stated, at page 672:
* * * [i]t must be remembered that the purpose of the statute requiring claims for refund to be filed within a stated time limit is to give the government notice of the pending claim and thus protect it from stale demands. * *■ * The first claim must therefore give notice of the subject matter of the second. * * * It is considered that such notice has been given when the examination necessary to acceptance or rejection of the first claim would necessarily reveal the factual situation to which the second claim relates, or the grounds on which it relies.
See also St. Joseph Lead Co. v. United States, supra.
That plaintiff would have and should have received the refund under its amended claim is quite clear from the cited case. Moreover, it is quite clear that under section 3801, supra, plaintiff was entitled to and did receive a refund. More in point, however, is the fact that the plaintiff was entitled to a refund based on its original claim. In the case of Harlan v. United States, 160 Ct. Cl. 209, 312 F. 2d 402 (1963), a similar situation is presented. In the Harlan case the taxpayers filed claims for refund for the years 1949 and 1950. The adjustments made under said claims resulted in a net operating loss for 1950 and a reduction in taxpayer’s 1949 tax. The question there was whether the taxpayer could carry back this loss to 1949 and gain the resulting tax benefit even tho its claim for refund never specifically asserted tliis deduction. The court, holding for the taxpayer, said at page 218:
* * * In filing claims for both 1949 and 1950 and in *110 asserting that there were losses for both years, the taxpayer adequately alerted the Commissioner of Internal Revenue to the potential existence of a carryback from the later to the earlier period. The Commissioner would not be required to search for any possible year to which a 1950 loss might be carried; but, his attention being riveted on 1949-1950, it is reasonable to assume that he would and should have considered whether a loss in one of those years would affect the tax for the other (which was itself claimed as a loss year). This would not be “forcing the inquiry into an unexplored territory, into strange and foreign paths”; the Commissioner is simply being asked “to take action upon discoveries already in the making or perhaps already made. * * * At that point discovery has gone on to such a stage that the Commissioner may not rid himself of the duty of pressing forward to the end.” Bemis Brothers Bag Co. v. United States, 289 U.S. 28, 35 (1933) ; see also Pink v. United States, 105 F. 2d 183, 186 (C.A. 2, 1939). The refund claims were adequate to permit plaintiff to take advantage of a carryback of a net operating loss from 1950 to 1949.
We believe the Harlan case, supra, to be entirely disposi-tive of this issue.
Being entitled to a loss carry-back because of the original claim for refund, it follows that interest is due plaintiff either from the date of overpayment or from the date of the claim for refund which alleged the net operating loss.
In respect to the above, it is clear that interest on over-payments based on carry-back loss stems from the date of filing- claims for credit or refund. Section 3771(e) of the Internal Revenue Code of 1939 provides:
(e) Claims Based on Garry-Back of Loss or Credit.— If the Commissioner determines that any part of an overpayment is attributable to the inclusion in computing the net operating loss deduction for the taxable year of any part of the net operating loss for a succeeding taxable year or to the inclusion in computing the mxused excess profits credit adjustment for the taxable year of any part of the unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period before the filing of a claim for credit or refund of such part of the overpayment or the filing of a petition with the Tax Court, whichever is earlier; nor *111 for any period beginning with the date of filing of an application under section 3780(a) relating to such part of the overpayment and ending with the last date the Commissioner’s determination is required to be made under section 3780 (b); nor, in case an application is made under section 3780(a), for any period before the first day of the month immediately following the month in which falls the last date prescribed by law (including any extension of time granted the taxpayer) for filing the return for the taxable year of the net operating loss or unused excess profits credit, or before the date on which the return is filed, whichever is later.
Since plaintiff for the first time claimed a deduction for its 1944 net operating loss on July 3, 1946, interest should have accrued at the rate of six percent per annum from that date. Consequently, in our view the Commissioner of Internal Eevenue was in error in fixing August 10,1954, the date of the last claim for refund, as the beginning point of interest payment, and plaintiff is entitled to recover the difference in the amount claimed and that paid.
Judgment will be entered for plaintiff, with the exact amount of recovery determined under Eule 38(c) of the Eules of this court.
FINDINGS OF FACT
The court, having considered the facts as stipulated by the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. Pearl Assurance Company, Limited, the plaintiff above named, is a corporation organized and existing under and by virtue of the laws of the Kingdom of Great Britain which is duly authorized to do and does do insurance business in the State of New York and other states in the United States, with its principal place of business in the United States located at 19 Eector Street, New York 6, New York.
2. The laws of the Kingdom of Great Britain accord to citizens of the United States the right to prosecute in the courts of that country claims against the Kingdom of Great Britain.
3. On June 14, 1943, the plaintiff filed its final Federal income tax return for the calendar year 1942 with the Collector of Internal Eevenue for the Second District of New *112 York at New York City, New York, reporting a Federal income tax liability of $52,004.29. This tax was paid by the plaintiff on or before the statutory installment payment dates in accordance with the provisions of the Internal Revenue Code of 1989.
4. The plaintiff filed timely Federal income tax returns for the calendar years 1943 and 1944 with the Collector of Internal Revenue for the Second District of New York at New York City, New York. The plaintiff’s 1943 income tax return indicated a Federal income tax liability in the amount of $6,638.46, which the plaintiff paid on or before the statutory installment payment dates in accordance with the provisions of the Internal Revenue Code of 1939. The plaintiff’s 1944 income tax return showed that the plaintiff sustained a net operating loss, as defined in section 122 of the Internal Revenue Code of 1939.
5. On March 11, 1946, plaintiff filed with the Collector of Internal Revenue for the Second District of New York at New York City, New York, a timely claim for refund of income tax paid for the calendar year 1942. This claim for refund alleged that adjustments should be made for the tax year 1942 because of additional Head Office expenses and taxes, a further deduction for the British excess profits tax, and an overstatement in the amount of dividends reported. There was no allegation therein with reference to a loss carry-back from the year 1944.
6o On July 3,1946, the plaintiff filed with the Collector of Internal Revenue for the Second District of New York at New York City, New York, a timely claim for refund of the income tax paid for the calendar year 1943. This claim for refund was based on the net operating losses plaintiff sustained in the calendar years 1944 and 1945. There was no allegation in this claim indicating that the 1944 net operating loss should be carried back to the tax year 1942.
7. On the date that the plaintiff filed its claim for refund for the calendar year 1943 it was not barred by the statute of limitations from filing a claim for refund for the calendar year 1942 based on its 1944 net operating loss. Because the Commissioner of Internal Revenue and the plaintiff consented to extending the period of time within which assess *113 ments could be made for the taxable years 1942 and 1944 the plaintiff was not barred from making such a claim until after December 31, 1951.
8. The plaintiff’s claims for refund for the years 1942 and 1943 were partially allowed, to the extent of $8,119.96 and $5,206.99, respectively, and were rejected, in part, by final letters of rejection dated August 16, 1951. The refunds allowed for both years were attributable to adjustments in the amount of plaintiff’s Head Office expenses and taxes. The 1943 refund was also based on the net operating loss carry-back from the year 1945.
9. The plaintiff, in an application dated June 23,1952 and filed with the Commissioner of Internal Revenue, requested the reopening and reconsideration of its 1942 and 1943 claims for refund.
10. The Internal Revenue Service audited the plaintiff’s 1942, 1943 and 1944 Federal income tax returns on several occasions. The first and last revenue agent’s reports regarding the returns for the years 1942, 1943, and 1944, all of which were audited at the same time by the same revenue agent, were dated January 11,1950 and November 10, 1952, respectively. The revenue agent’s report dated November 10, 1952 was issued as a result of the application for reconsideration referred to in finding 9 hereof.
11. The Commissioner’s conclusions regarding the deduc-tibility of plaintiff’s 1944 net operating loss are indicated in the revenue agent’s report dated November 10, 1952, which the plaintiff received with a letter from the District Director of Internal Revenue, Lower Manhattan, New York regarding the plaintiff’s taxable years 1942 through 1947, inclusive.
12. The revenue agent’s report, dated November 10, 1952, advised plaintiff that it was not entitled to any tax refund attributable to its 1944 net operating loss for the taxable year 1943 on the grounds that under the Internal Revenue Code of 1939, section 122, such a net operating loss must first be deducted in the calendar year 1942.
13. The Commissioner of Internal Revenue informed the plaintiff that the plaintiff’s claim for refund for the calendar year 1943, which reported and claimed the plaintiff’s *114 1944 net operating loss, could not be considered a claim for refund for the calendar year 1942, and as plaintiff had not filed a timely claim for refund requesting a refund of 1942 taxes because of its 1944 net operating loss, it was not entitled to deduct its 1944 net operating loss carry-back in 1942.
14. As the result of the application for reconsideration referred to in finding 9 hereof, the plaintiff received a further refund for the calendar years 1942 and 1943 in the amounts of $26,959.17 and $1,431.47, respectively. No part of these refunds were attributable to plaintiff’s 1944 net operating loss.
15. On August 16, 1953, the plaintiff was barred by the statute of limitations from instituting any suit on the partial rejection of its 1942 and 1943 claims for refund.
16. On August 10, 1954, plaintiff filed a claim for refund of 1942 tax with the District Director of Internal Revenue, Lower Manhattan, New York requesting a refund of tax in the amount of $15,467.44. This claim was the first formal claim for refund (Form 843) in which the plaintiff claimed that it was entitled to a refund of its 1942 taxes because of the net operating loss it incurred in 1944.
17. The plaintiff’s claim for refund of August 10, 1954 advised the District Director, inter alia, that it was entitled to the refund of $15,467.44 under section 3801(b) (6) of the 1939 Internal Revenue Code, which was added thereto by section 211 of the Technical Changes Act of 1953, because (1) there had been a “determination” disallowing the plaintiff’s 1944 net operating loss carry-back as a deduction for the year 1943 which deduction should have been allowed if it had been properly claimed, but was not allowed for the year 1942; and (2) on July 3, 1946, the date that the plaintiff first erroneously maintained, in writing, that it was entitled to a deduction for the year 1943 'because of its 1944 net operating loss, it was not barred from claiming said deduction for the year 1942.
18. Subsequent to June 28, 1956, the Commissioner of Internal Revenue certified for payment and on August 27, 1956, the plaintiff received a refund of tax for the calendar year 1942 in the amount of $15,467.44. This refund of tax was granted because of section 3801 (b) of the Internal Rev *115 enue Code of 1939, as amended by section 211 of the Technical Changes Act of 1953. The revenue agent’s report refers only to the computations made in determining the amount to be refunded.
19. In addition to the refund of tax, the plaintiff also received interest in the amount of $1,849.95. This interest was computed on the refund of tax of $15,467.44 at six percent per annum from August 10, 1954 to August 7, 1956.
20. In a letter addressed to the District Director of Internal Revenue, Lower Manhattan, New York, dated August 29, 1956, the plaintiff’s attorney claimed that it was entitled to additional interest on the tax refund of $15,467.44 that it had received.
21. In March of 1959, the plaintiff filed a claim for refund with the District Director of Internal Revenue, Lower Manhattan, New York requesting additional interest on the refund of tax it received on August 27, 1956. This claim for refund asserted that, under section 3801, interest on the tax refund of $15,467.44 should have been computed from July 3, 1946, the date the plaintiff filed its 1943 claim for refund requesting a refund based on its 1944 net operating loss carry-back, to within 30 days prior to the issuance of the refund check the plaintiff received on August 27, 1956. The plaintiff’s claim for refund requested additional interest of $7,491.54 “plus such greater amount as is legally due the taxpayer”.
22. The District Director of Internal Revenue, Lower Manhattan, New York, advised the plaintiff by registered mail, in a letter dated April 24, 1959, that its claim for additional interest was denied.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment will be entered to that effect.
The amount of recovery will 'be determined pursuant to Rule 38 (c) of the Rules of this court.
*116 In accordance with the opinion of the conrt and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on February 28, 1961, that judgment for the plaintiff be entered for $7,519.50.

 Internal Revenue Code of 1989, section 122, provides that “such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the ease of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year.”