FILED
United States Court of Appeals
Tenth Circuit

**June 20, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARRICK RESOURCES (USA) INC.,
and SUBSIDIARIES,

        Plaintiffs-Appellants,

    v.

UNITED STATES OF AMERICA,

        Defendant-Appellee.

No. 07-4046

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:03-CV-1006-DB)**

---

Dennis P. Bedell (Alan I. Horowitz with him on the briefs), Miller & Chevalier Chartered, Washington, D.C. (Francis M. Wikstrom, Parsons Behle & Latimer, Salt Lake City, Utah, also with him on the briefs), for Appellants.

Steven W. Parks, Attorney (Richard Farber, Attorney, and Eileen J. O'Connor, Assistant Attorney General, with him on the brief), Tax Division, Department of Justice, Washington, D.C., for Appellee.

---

Before **TYMKOVICH**, **McKAY**, and **SEYMOUR**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

    Barrick Resources argues in this appeal that the Internal Revenue Service wrongfully applied a three-year statute of limitations to deny refunds based on

amended tax returns it filed in 2002 and 2003. We conclude that the IRS did not err in finding that these claims were filed out of time.

Having jurisdiction pursuant to 28 U.S.C. § 1291 and finding no legal error, we therefore AFFIRM the district court order granting the IRS summary judgment.

## I. Background

Barrick's claims arise out of a series of amended tax returns it filed in 2001, 2002, and 2003, seeking refunds based on deductions for net operating losses that occurred in 1997 and 1998.

Barrick sustained a series of operating losses in 1997 and 1998 that it was unable to deduct when it filed its 1997 and 1998 tax returns. A provision of the tax code, however, allows a business to apply net operating losses to profits realized in prior or future tax years. *See* 26 U.S.C. § 172(b). "Congress enacted the net operating loss provisions so that a taxpayer with alternating years of profits and losses would not pay significantly higher taxes over a period of years than a taxpayer with stable profits, where the average incomes of the two taxpayers were equal." 7 *Mertens Law of Federal Income Taxation* § 29:1 (2008). The net operating loss deduction accomplishes this goal by "enabl[ing] a taxpayer to set off its lean years against its lush years and to strike something like an average taxable income." *Id.*

A taxpayer generally may carry back net operating losses two or three years, depending on when the losses were incurred. 26 U.S.C. § 172(b)(1). For instance, net operating losses incurred in 1997 may be applied against gains realized in the prior three tax years. To qualify for a refund, the taxpayer must file amended returns for each tax year in which it seeks to use the deduction. These amended returns must be submitted within three years from "the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss . . . which results in such carryback." 26 U.S.C. § 6511(d)(2)(A). Thus, if the filing date of a taxpayer's 1997 tax return was September 15, 1998, the taxpayer must submit its amended tax returns by September 15, 2001, to timely claim a refund based on net operating losses incurred in 1997.

The tax code permits a longer carryback period for a special category of losses, so-called "specified liability losses." 26 U.S.C. § 172(f). These losses are deemed by Congress to merit special deductibility. *See id.* § 172(f)(1)(A)–(B) (listing eligible types of losses). At issue here is one type of specified liability loss: costs associated with satisfying a state or federal law requiring reclamation of land used for mining. *Id.* § 172(f)(1)(B)(i)(I). These reclamation losses may be carried back ten years. Thus, a taxpayer sustaining reclamation losses in 1997 could amend its tax returns as far back as 1987 and offset gains incurred in each of the intervening years. But as with ordinary net operating losses, a taxpayer

-3-

still must file amended tax returns within three years of the filing date of the tax year the losses were actually incurred to take advantage of the deduction. *Id.* § 6511(d)(2)(A).

*Amended Tax Returns Filed in 2001*

In 1997, Barrick sustained over $19.8 million in net operating losses, including $1.1 million in reclamation losses. In 1998, Barrick incurred an additional $15.6 million in operating losses, including $14.2 million in reclamation losses. Barrick subsequently filed a series of amended tax returns seeking to use these losses to offset profits from previous years.

Accordingly, in 2001, Barrick filed two timely amended tax returns applying the 1997 losses to the tax years 1994 and 1995. In these returns, it offset income from 1994 and 1995 with $13.2 million in 1997 net operating losses.

*Amended Tax Returns Filed in 2002*

Realizing the potential for additional offsets it missed earlier, in 2002 Barrick filed amended 1991 and 1992 returns attempting to apply 1997 reclamation losses to earlier years under the special ten-year rule.[1] It sought refunds for an additional $215,463 based on the 1997 reclamation losses. The IRS approved the amended returns and granted Barrick the requested refunds.

---

[1] The amended 1992 tax return also sought a refund based on 1998 reclamation losses. Neither Barrick nor the IRS challenges the refund Barrick received as a result of these 1998 losses.

*Amended Tax Return Filed in 2003*

Upon receiving these refunds, Barrick determined it overlooked substantial unused reclamation losses from both 1997 and 1998. Accordingly, it filed a second 1991 amended return in May 2003, this time requesting a refund of an additional $1,120,411. The IRS rejected Barrick's claim, concluding the three-year statute of limitations had expired (1) in 2001 for refund claims based on 1997 losses, and (2) in 2002 for claims based on 1998 losses.

*Summary*

The following chart summarizes the tax returns filed by Barrick.

### Chronology

| | |
|---|---|
| 1998 | Filed 1997 tax return reporting $19.8 million in net operating losses, including $1.1 million in reclamation losses |
| 1999 | Filed 1998 tax return reporting $15.6 million in net operating losses, including $14.2 million in reclamation losses |
| 2001 | Timely filed amended 1994 and 1995 tax returns within three years of reporting 1997 losses |
| 2002 | Filed amended 1991 tax return attempting to apply unused 1997 reclamation losses |
| 2002 | Filed amended 1992 tax return attempting to apply unused 1997 and 1998 reclamation losses |
| 2003 | Filed second amended 1991 tax return attempting to apply unused 1997 and 1998 reclamation losses |

*District Court Proceedings*

Barrick sued the IRS, challenging its refusal to approve the second amended 1991 tax return. The IRS realized the three-year statute of limitations had also run on the amended 1991 and 1992 tax returns Barrick filed in 2002. It then filed a separate suit to recover the $215,463 it had refunded for the 2002 claims. The court consolidated the two lawsuits.

While agreeing the three-year statute of limitation applied, Barrick argued that it was eligible for an exception to the limitations period. Rejecting Barrick's argument, the district court granted the IRS summary judgment on both claims. *Barrick v. United States*, 464 F. Supp. 2d 1443 (D. Utah 2006).

This timely appeal follows.

## II. Standard of Review

We review de novo the grant of summary judgment to determine whether any genuine issues of material fact were in dispute and, if not, whether the district court correctly applied the substantive law at issue. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 792 (10th Cir. 1998). "Because the parties do not dispute the facts, we have before us a purely legal question, and thus we review the matter de novo." *Locke v. Saffle*, 237 F.3d 1269, 1270–71 (10th Cir. 2001).

## III. Discussion

The central issue on appeal is whether Barrick filed its amended tax returns within the applicable limitations period. It contends that the returns filed in 2002

and 2003 are not time-barred because they merely amend previous timely-filed claims. The parties agree that the issue of timeliness is controlled by our decision in *United States v. Ideal Basic Industries, Inc.*, 404 F.3d 517 (10th Cir. 1968).

### A. *Ideal Basic*

*Ideal Basic* allows an exception to the applicable limitations period. As we discussed above, taxpayers seeking to use net operating losses to offset profits from prior years must ordinarily file amended tax returns within three years from the filing date of the tax year the losses occurred. 26 U.S.C. § 6511(d)(2)(A). If a taxpayer fails to file a timely claim with the IRS, the taxpayer is barred from subsequently pursuing such a claim in any court. *Id.* § 7422(a). The Supreme Court, however, has long recognized an exception to this general rule: under limited circumstances, a taxpayer may seek additional deductions by amending a timely *pending* claim after the statute of limitations expired so long as the requested deductions are fairly encompassed in the original claim. *See United States v. Andrews*, 302 U.S. 517, 524 (1938).

We applied this exception in *Ideal Basic*, 404 F.2d at 124, and explained it applies only to deductions based on facts that were "necessarily" before the IRS in the pending claim. We then adopted the following two-part test:

> The test applied to determine . . . whether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investigation of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the

-7-

commissioner in determining the merits of the original claim, the amendment is proper.

*Id.*

To qualify for this exception, therefore, the taxpayer must satisfy the following two elements: (1) it amended a timely pending claim, and (2) the IRS would have necessarily ascertained the facts upon which the new deduction is based when determining the merits of the original claim.

This exception is carefully delineated to promote fairness, administrative efficiency, and finality. It promotes fairness by "providing no arbitrary limit on the amendment of claims previously filed." *See id.* at 125. Moreover, it fosters administrative efficiency. By permitting taxpayers to clarify timely pending amended returns and claim all of their allowed deductions, the rule helps the IRS to more quickly and accurately resolve otherwise ambiguous or inaccurate claims. The *Ideal Basic* exception also ensures finality by deterring taxpayers from sleeping on their rights. By permitting taxpayers only to amend timely *pending* claims, this rule creates a strong incentive for taxpayers to promptly submit amendments to the IRS.

**B. *Application to the Amended Returns Filed in 2002 and 2003***

Applying *Ideal Basic* to the claims here, we conclude that the amended returns filed in 2002 and 2003 were time-barred.

-8-

### 1. *The amended tax returns filed in 2002 were untimely*

Barrick argues it is entitled to the *Ideal Basic* exception for the returns it filed in 2002 because these claims satisfied both prongs of the *Ideal Basic* test. First, Barrick states the 2002 filings merely amend the pending 2001 claims. Second, it argues a reasonable investigation by the IRS into the net operating losses applied to the 2001 claims would have revealed Barrick was also entitled to apply unused reclamation losses to previous tax years. We disagree.

*The 2002 claims did not amend the 2001 pending claims.*

Barrick argues its 2002 claims simply amended the pending returns it timely filed in 2001. As noted above, in 2001, Barrick filed amended returns for 1994 and 1995, seeking to use 1997 net operating losses to offset income in those years. In 2002, however, Barrick filed a new series of returns, amending its *1991 and 1992 returns*, relying on the ten-year carryback rule for reclamation losses. This, it claims, was merely an amendment to its 2001 filing.

We reject this logic. The 1991 and 1992 tax returns filed in 2002 neither referred to nor altered the 1994 and 1995 tax returns filed in 2001. Rather than a simple amendment, Barrick's 2002 claim encompasses wholly different tax years and applies entirely different carryback rules: the 1991 and 1992 returns only apply the ten-year carryback rule for reclamation losses, while the 1994 and 1995 amended returns only apply the three-year carryback rule for ordinary net operating losses. Barrick never attempted to apply the ten-year carryback rule for

reclamation losses in its 1994 and 1995 tax returns.  We thus agree with the district court that Barrick has not amended a pending refund claim.  It instead filed an entirely new claim.  Therefore, we conclude Barrick does not satisfy *Ideal Basic*'s first prong.

> *The IRS did not necessarily ascertain the facts upon which the 2002 claims were based.*

Even if we construed the 2002 claims to properly amend the 2001 returns, the *Ideal Basic* exception still would not apply.  Under *Ideal Basic*'s second prong, "the facts upon which the amendment is based" must "necessarily have been ascertained by the commissioner in determining the merits of the original claim." *Ideal Basic*, 404 F.2d at 124.  Barrick contends the IRS should have concluded after a reasonable investigation that Barrick intended to assert claims for refunds for years prior to 1994 and 1995.

In support of this argument, Barrick points to *Ryan v. Harrison,* 146 F. Supp. 671 (N.D. Ill. 1956)—a case in which a district court applied the exception to the statute of limitations.  In *Ryan*, a partnership accrued a net operating loss in 1946.  It timely filed an amended tax return for 1945, carrying back the 1946 loss and requesting a refund.  After the statute of limitations expired, the taxpayer realized it should have carried back the 1946 losses to tax year 1944 rather than 1945.  The partnership filed an amendment to the claim, explaining that "[o]ur refund in the amount of $12,509.10 was based on carry back to 1945 and should

-10-

have read $8,796.61 based on carry back to 1944." *Id.* at 672. The district court held that the exception to the statute of limitations applied because "the first claim could not have been denied or allowed without an inquiry into taxpayers' returns for the years 1944 through 1946." *Id.* at 674. Because the second claim merely amended a pending timely claim, the district court awarded the taxpayer the refund it requested.

*Ryan* is distinguishable because Barrick's 1994 and 1995 amended tax returns could be denied or allowed without an inquiry into the taxpayer's 1991 and 1992 tax returns. In 1997, Barrick reported $19.8 million in total losses, and reclamation expenses accounted for only $1.1 million of that amount. In its 2001 filings, Barrick sought to carry back only $13.2 million from these 1997 losses, and its filing does not even mention its entitlement to reclamation losses. Because sufficient non-reclamation losses existed to account for the $13.2 million Barrick claimed, the IRS did not "necessarily" ascertain the validity of the 1997 reclamation costs when determining the merits of the 2001 refund claims. In other words, the existence or validity of eligible reclamation losses was simply not an issue before the IRS in resolving Barrick's 2001 filings. Because they were not an issue, the IRS did not need to determine whether Barrick should have offset 1991 and 1992 profits with the 1997 reclamation losses.[2]

_____

[2] Barrick also cites *Pearl Assurance Co. v. United States*, 324 F.2d 512 (Ct. Cl. 1963), which involves facts and analysis similar to *Ryan*. We conclude *Pearl*
(continued...)

This conclusion is confirmed by tax code provisions which explain the application of the net operating loss deduction. Where sufficient ordinary net operating losses are available to satisfy a claimed deduction, the IRS does not need to evaluate the accuracy of other types of losses. For example, with respect to "specified liability losses," the tax code requires they "shall be treated as a *separate* net operating loss for such taxable year to be taken into account *after* the remaining portion of the net operating loss for such taxable year." 26 U.S.C. § 172(f)(5) (emphasis added). In other words, ordinary net operating losses must be distributed *before* specified liability losses. Reclamation losses—a type of specified liability losses—are therefore treated this way. *Id.* § 172(f)(1)(B)(i)(I). Because sufficient ordinary net operating losses existed to account for the $13.2 million in losses claimed in Barrick's 2001 filings, the IRS did not need to evaluate the validity of the reported reclamation losses and other potentially available specified liability losses.

This conclusion is amplified by the requirement that a taxpayer must carry back specified liability losses—including reclamation losses—and ordinary net operating losses to the earliest year in which they can be used. *See* 26 U.S.C. § 172(b)(2). Unlike ordinary net operating losses, reclamation losses have a ten-year carryback period. *Id.* § 172(f)(1)(B)(i)(I). For Barrick to have carried back

---

[2](...continued)
*Assurance* is distinguishable from the present case for the same reasons we distinguish *Ryan.*

-12-

the $1.1 million in reclamation losses for less than ten years—to 1994 and 1995—it would have first needed to file an election waiving the ten-year carryback. *See* 26 U.S.C. § 172(f)(6). It did not do so. When evaluating the 1994 and 1995 amended returns, therefore, the IRS would have properly determined that Barrick only carried back ordinary net operating losses from 1997. Because the IRS did not need to ascertain the validity of the reclamation losses Barrick reported in 1997, we conclude Barrick did not satisfy *Ideal Basic*'s second prong.

> *Ideal Basic does not require the amended claim to be based on the same facts and theory as the original timely claim.*

Barrick also suggests the *Ideal Basic* exception should apply only when the amended claim is based on the same facts *and* theory as the original timely claim. Thus, it contends its general use of § 172 net operating losses was enough to put the IRS on notice that it intended to use all of its losses in whatever year they might apply. *Ideal Basic* does not set forth this additional requirement. In other jurisdictions courts have sometimes permitted taxpayers to file amended claims, even though the amended claims add an additional theory of recovery. *See, e.g.*, *H.B. Zachry Co. v. United States*, 168 F. Supp. 777 (Ct. Cl. 1958); *see generally* 15 *Mertens Law of Federal Income Taxation* § 58:38 ("An amendment should be allowed if it . . . adds grounds based on facts stated in the claim as originally filed."). Because Barrick fails to satisfy the two requirements we articulated in

-13-

*Ideal Basic*, it is unnecessary for us to decide whether the amended claim must also be based on the same theory as the original timely claim.

In sum, Barrick's 2002 claims do not amend its 2001 filings, and the IRS did not "necessarily" ascertain the validity of the reclamation losses when evaluating the 2001 claims. Because Barrick failed to satisfy the requirements set forth in *Ideal Basic*, the district court properly concluded the 2002 claims were untimely.[3]

### 2. *The amended tax return filed in 2003 was also untimely*

In 2003, Barrick filed a second amended 1991 tax return, seeking an additional $1,120,411 refund. Part of that refund, $758, was based on the carrying back of 1997 reclamation losses. Barrick argues the *Ideal Basic* exception applies because the 2003 claim properly amends the 2002 filings. Barrick concedes, however, that if the 2002 claims are not timely, then the requested refund is also untimely. Because we conclude the 2002 claims are untimely, we agree this portion of the 2003 claim is also time-barred.

The remainder of the claimed 1991 refund, $1,119,653, was based on the carrying back of 1998 reclamation losses whose three-year limitations period

---

[3] The IRS alternatively argues Barrick's "claims for refund for 1994 and 1995 could not be amended to add claims for refund for other years, because the governing regulation specifically requires that 'a separate claim shall be made for each type of tax for each taxable year or period.'" Aple. Br. 24 (quoting Treas. Reg. § 301.64002-2(d)). Because we conclude the 2002 claims do not satisfy *Ideal Basic* and are therefore untimely, it is unnecessary for us to address this additional argument.

would not expire until 2002. In 2002, Barrick submitted a timely 1992 amended tax return carrying back reclamation losses from 1998. Although Barrick submitted its 2003 refund claim after the statute of limitations expired, Barrick contends the *Ideal Basic* exception applies because the 2003 claim amends a timely 1992 return filed in 2002. We disagree. The 2003 claim does not *amend* the timely 1992 return; as discussed above, the 2003 claim asserts a refund claim for the 1991 tax year, but does not make any changes to the 1992 amended return.

Nor was a timely-filed 1992 amended return *pending* at the time Barrick filed its 2003 claim. By the time Barrick filed its 2003 claim, the IRS had already taken final action on the 1992 refund claim, resolving it in Barrick's favor and closing the matter.

To overcome this obstacle, Barrick makes one last argument to escape the limitations period. It asks us to adopt the reasoning of the Eleventh Circuit in *Mutual Assurance, Inc. v. United States*, 56 F.3d 1353, 1356 (11th Cir. 1995). In that case, the court allowed the taxpayer to amend a prior timely claim after the statute of limitations expired, even though the IRS had already allowed the original claim and paid the refund.

We reject this invitation. Such a rule would damage the careful balance we struck in *Ideal Basic* by undermining administrative efficiency and failing to deter the filing of stale claims. Because amendments would be permitted even after the IRS allowed or disallowed the claim, taxpayers would have little incentive to

-15-

promptly bring amendments to the IRS's attention.  Under *Mutual Assurance*, if the IRS denied a taxpayer's claim, the taxpayer could take a second bite at the apple by filing an amended claim.[4]

For these reasons, we find *Mutual Assurance* unpersuasive.  We conclude, therefore, that Barrick's 2003 refund claim is also barred by the statute of limitations.

## IV.  Conclusion

In sum, Barrick's 2002 and 2003 claims do not satisfy the *Ideal Basic* test.  Because these filings are untimely, we conclude the district court properly granted the IRS summary judgment on both claims.  We therefore AFFIRM the district court's order.

---

[4] Other courts agree.  As the Federal Circuit noted in *Computervision Corp. v. United States*, 445 F.3d 1355, 1372 (Fed. Cir. 2006), *"Mutual Assurance* is untenable since it would allow amendments submitted after filing the refund suit to extend the limitations period indefinitely."  An open-ended amendment period is not contemplated by the statutory scheme, and Barrick cannot rely on undeveloped facts that might be somewhere buried in a timely filed, but closed claim.