# United States Tax Court

REVIEWED
165 T.C. No. 11

APACHE CORPORATION AND SUBSIDIARIES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 25984-22.                    Filed November 13, 2025.

————

For each of 2016 and 2017, P reported a net operating loss that consisted in part of a "specified liability loss" within the meaning of I.R.C. § 172(f)(1). P's return for each year included an election under Treas. Reg. § 1.1502-21(b)(3)(i) to waive the entire carryback period pursuant to section 172(b)(3) for the consolidated net operating loss of the consolidated group of which P was the common parent. P expressly stated that P did not elect under I.R.C. § 172(f)(6) to relinquish the carryback period with respect to the specified liability loss incurred in each year.

P received a tentative refund for each of 2006 and 2007 from the carryback of the specified liability losses it reported for 2016 and 2017, respectively. R then determined deficiencies for 2006 and 2007 based on the disallowance of the carrybacks.

P has moved for partial summary judgment that its election for each year relinquished the carryback of only that portion of its net operating loss that exceeded its reported specified liability loss. R seeks partial summary judgment that P's election for each of 2016 and 2017 relinquished the carryback of its entire net operating loss for the year.

**Served 11/13/25**

*Held*: P's election for each year relinquished the carryback of only that portion of its net operating loss that exceeded its reported specified liability loss.

*Held, further*, P's Motion will be granted; R's Motion will be denied.

TORO, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, JONES, GREAVES, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, joined and which BUCH, *J.*, joined as to Part IV.

BUCH, *J.*, wrote a concurring opinion.

HALPERN, *J.*, wrote an opinion concurring in part and dissenting in part, which MARSHALL, *J.*, joined.

———————

*Shawn R. O'Brien* and *Edward L. Froelich*, for petitioner.

*Estevan D. Fernandez*, *Monica D. Polo*, *Jennifer C. Arthur*, *Christopher M. Menczer*, *Casinova O. Henderson*, and *Michael A. Sienkiewicz*, for respondent.

OPINION

TORO, *Judge*: "A 'net operating loss' results from deductions in excess of gross income for a given year." *See United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 825 (2001) (citing I.R.C. § 172(c)).[1] Section 172 permits taxpayers to carry net operating losses through time, taking them backward or forward to years for which they can be deducted.[2] *See United Dominion*, 532 U.S. at 825. The provision serves

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] We use the present tense to refer to the law that existed for the years at issue in this case, 2016 and 2017. In 2017, Congress amended section 172 with the result

to smooth a taxpayer's profits and losses, allowing it "to set off its lean years against its lush years." *Libson Shops, Inc. v. Koehler*, 353 U.S. 382, 386 (1957); *accord United Dominion*, 532 U.S. at 825.

By default, a net operating loss can be carried back 2 years and then forward 20 years. I.R.C. § 172(b)(1)(A). Over time, Congress has defined categories of losses which can be carried back further, recognizing that certain types of losses "tend to be particularly 'large and sporadic.'" *United Dominion*, 532 U.S. at 825 (quoting Staff of J. Comm. on Tax'n, 95th Cong., General Explanation of the Revenue Act of 1978, JCS-7-79, at 232 (J. Comm. Print)). As relevant here, in 1990, Congress changed the law so that a "specified liability loss" could be carried back ten years.[3]

But Congress did not leave taxpayers without choices. Section 172 permits taxpayers to elect not to carry back their net operating losses and instead to carry such losses only forward. The election is helpful to taxpayers who have tax attributes (such as credits) that might otherwise expire unused. A taxpayer in that position might prefer to use expiring credits during the earlier years to which a net operating loss would otherwise have been carried back and have the loss available for use in the future.

Petitioner, Apache Corp. & Subs. (Apache), is one such taxpayer. For 2016 and 2017, it made elections under section 172(b)(3) to waive the carryback period for its normal net operating losses. That is, it chose to carry those losses only forward. But it expressed an intent not to relinquish the ten-year carryback for its specified liability losses.

Now before the Court are Cross-Motions for Partial Summary Judgment concerning whether Apache was able to restrict its elections

---

that, under current law, most net operating losses cannot be carried back at all. I.R.C. § 172(b)(1) (as amended by the Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 13302(b), 131 Stat. 2054, 2122 (2017)).

[3] As the Supreme Court observed in *United Dominion*, 532 U.S. at 829 n.6:

The difference [between the specified liability losses (SLLs) at issue here and the product liability losses (PLLs) involved in that case] does not matter. The PLL was a statutory predecessor to the SLL, and PLLs were folded into the SLL provision in § 11811(b)(1) of the Omnibus Budget Reconciliation Act of 1990, [Pub. L. No. 101-508,] 104 Stat. [1338,] 1388–532. Thus, "[i]n all relevant respects, the provisions on [PLLs] and SLLs are the same." Leatherman, Current Developments for Consolidated Groups, 486 PLI/Tax 389, 393, n. 5 (2000) . . . .

to its normal net operating losses. We conclude it was. The text of section 172, its structure, the context in which it developed, judicial precedent interpreting it, and even the Government's past interpretation of the statute as expressed in regulations all point in favor of Apache's position. We will therefore grant Apache's Motion and deny the Commissioner's.

*Background*

Apache is an oil and gas exploration and production company organized under Delaware law. When it filed its Petition, Apache's principal place of business was in Houston, Texas.

During 2016 and 2017, Apache was the common parent of an affiliated group. That group filed a consolidated calendar year Form 1120, U.S. Corporation Income Tax Return, for both years.

I.    *2016 Tax Returns*

Apache timely filed Form 1120 for the taxable year 2016 on September 21, 2017, having requested an extension. On October 13, 2017, Apache filed a superseding Form 1120.

On both its initial and superseding Forms 1120 for 2016, Apache reported a net operating loss of $1,931,356,691. Within that amount, Apache reported that $40,734,363 qualified as a specified liability loss within the meaning of section 172(f)(1). The parties have stipulated that Apache did not claim any of its 2016 specified liability loss as product liability amounts under section 172(f)(1)(A).

Apache included the following statement on its initial and superseding Forms 1120 for 2016:

> ELECTION TO FOREGO NET OPERATING LOSS CARRYBACK PURSUANT TO INTERNAL REVENUE CODE § 172(b)(3) AND TREAS. REG. § 1.1502-21(b)(3)
>
> This is an election under § 1.1502-21(b)(3)(i) to waive the entire carryback period pursuant to section 172(b)(3) for the 2016 CNOLs of the consolidated group of which Apache Corporation (EIN . . . ) is the common parent.
>
> Apache Corporation and Subsidiaries does not elect to relinquish the carryback period with respect to specified

liability losses incurred in this tax year ended December 31, 2016 pursuant to Internal Revenue Code § 172(f)(6).

Ex. 1-J, p. 244; Ex. 2-J, p. 243.

On October 6, 2017—between the filing of its initial and superseding Forms 1120—Apache filed Form 1139, Corporation Application for Tentative Refund, seeking to carry its $40,734,363 specified liability loss back ten years to its tax year 2006. As a result, on Form 1139, it claimed a refund of $13,829,316. Apache received a tentative refund of that amount in January 2018.

II.    *2017 Tax Returns*

Apache timely filed Form 1120 for the taxable year 2017 on October 10, 2018, having requested an extension. On October 15, 2018, it filed a superseding Form 1120.

On its initial and superseding Forms 1120 for 2017, Apache reported a net operating loss of $3,082,583,587. Apache claimed that $30,818,137 of that amount qualified as a specified liability loss. The parties have stipulated that Apache did not claim any of its specified liability loss as product liability amounts under section 172(f)(1)(A).

Apache included on its initial and superseding Forms 1120 for 2017 a statement almost identical to its 2016 statement. The statement elected to waive Apache's net operating loss carryback period but not the carryback period with respect to its specified liability loss.

On December 12, 2018, Apache filed Form 1139, seeking to carry its reported specified liability loss of $30,818,137 back from 2017 to 2007. As a result, it claimed a refund of $10,139,167 for the 2007 taxable year. Apache received a tentative refund of that amount in March 2019.

III.   *Examination and Petition*

The Commissioner examined Apache's 2016 and 2017 returns. On September 26, 2022, the Commissioner issued to Apache a Notice of

Deficiency relating to the taxable years 2006, 2007, and 2015.[4]  A Form 886–A, Explanation of Items, attached to the Notice stated:

> It is determined that specified liability losses (SLL) within the meaning of section 172(f) reported in years 2016 and 2017 and carried back ten years to 2006 and 2007 are disallowed.  The taxpayer elected to forgo the entire carryback under section 172(b)(3) for both 2016 and 2017 and is not allowed to separately carry back the SLL net operating losses (NOL).

Ex. 7-J, p. 24.

Apache timely petitioned this Court for redetermination of its deficiencies.  In time, Apache and the Commissioner filed the Cross-Motions for Partial Summary Judgment now before the Court.  Apache seeks a ruling that it properly carried back its claimed specified liability losses to 2006 and 2007.  The Commissioner seeks a ruling that Apache's elections under section 172(b)(3) relinquished the carryback period for its claimed specified liability losses as well as the remainder of its net operating losses, and thus that Apache could not separately carry its claimed specified liability losses to 2006 and 2007.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly and unnecessary trials.  *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  The Court may grant partial summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002); *see also Take v. Commissioner*, 82 T.C. 630, 633 (1984) (explaining that if both parties move for summary judgment or partial summary judgment, this rule applies to each motion), *aff'd*, 804 F.2d 553 (9th Cir. 1986).  In considering the Motions, the Court construes factual materials and inferences drawn from them in the light most favorable to each nonmoving party.  *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

---

[4] The deficiency determined with respect to taxable year 2015 is not implicated by the Motions now before us, and we do not discuss it further.

II.     *Net Operating Loss Carryover Deductions*

    A.     *In General*

Section 172(a) allows as a deduction for a taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to that year and (2) the net operating loss carrybacks to the year. *See Metro One Telecomms., Inc. v. Commissioner*, 704 F.3d 1057, 1059–60 (9th Cir. 2012), *aff'g* 135 T.C. 573 (2010); *Powers v. Commissioner*, 43 F.3d 172, 176 (5th Cir. 1995), *aff'g in part, rev'g in part, and remanding* T.C. Memo. 1993-125 *and* 100 T.C. 457 (1993).

Section 172(b) defines net operating loss carryovers and carrybacks and provides rules for when they may be taken into account. Section 172(b) consists of three paragraphs.

Section 172(b)(1) sets out the years to which a net operating loss may be carried. As we have noted, as a general rule, net operating losses may be carried back 2 years and forward 20. I.R.C. § 172(b)(1)(A). Special rules exist, however, for specific types of losses. *See* I.R.C. § 172(b)(1)(B)–(F). Farming losses, for example, may be carried back five years and may not be carried forward. I.R.C. § 172(b)(1)(F). "Eligible losses" may be carried back three years, I.R.C. § 172(b)(1)(E),[5] and specified liability losses may be carried back ten years, I.R.C. § 172(b)(1)(C).

Section 172(b)(2) provides rules for determining the order of years to which a net operating loss will be carried. To start, the taxpayer carries the entire amount of a net operating loss to the earliest year to which it may be carried. I.R.C. § 172(b)(2). If the net operating loss exceeds taxable income for that year, then the excess of the loss over taxable income is carried to the following year, and so on until the loss is entirely consumed or may no longer be carried over. *Id.*

Section 172(b)(3) permits a taxpayer an election not to carry back a net operating loss. In relevant part, it provides: "Any taxpayer entitled to a carryback period under paragraph (1) [i.e., section 172(b)(1), described above] may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year." I.R.C.

---

[5] Generally speaking, "eligible losses" are losses from theft, fires, storms, shipwrecks, and other casualties incurred by individuals, as well as net operating losses attributable to federally declared disasters incurred by small businesses or farmers. *See* I.R.C. § 172(b)(1)(E)(ii).

§ 172(b)(3). This is the main provision at issue here, but before analyzing it in greater detail, we pause briefly to discuss specified liability losses, the category of losses Apache seeks to carry back.

B.  *Specified Liability Losses*

A specified liability loss belongs to a category of losses subject to special rules under section 172(b). *See* I.R.C. § 172(b)(1)(C), (f). Section 172(f)(1) defines a specified liability loss to include (1) losses attributable to product liability, I.R.C. § 172(f)(1)(A), as well as (2) amounts that satisfy a liability under state or federal law relating to the reclamation of land, the decommissioning of a nuclear power plant, the dismantlement of a drilling platform, the remediation of environmental contamination, or payments under a workers compensation act, subject to certain timing and accounting conditions, I.R.C. § 172(f)(1)(B). The losses at issue here fall in the second category.

As we have noted, specified liability losses can be carried back for ten years. I.R.C. § 172(b)(1)(C). But, in addition to the election under section 172(b)(3) at issue here (relinquishing the entire carryback period), taxpayers may make another special election regarding the ten-year carryback: "Any taxpayer entitled to a 10-year carryback under subsection (b)(1)(C) from any loss year may elect to have the carryback period with respect to such loss year determined without regard to subsection (b)(1)(C)." I.R.C. § 172(f)(6). That is, although specified liability losses are, by default, carried back 10 years, a taxpayer may opt to carry them back 2 years and forward 20, following the general rule for net operating losses.

Finally, specified liability losses are taken into account under section 172(b)(2) (sequencing the years to which a loss will be carried) according to a special rule. Section 172(f)(5) provides that "[f]or purposes of applying subsection (b)(2), a specified liability loss for any taxable year shall be treated as a separate net operating loss for such taxable year to be taken into account after the remaining portion of the net operating loss for such taxable year."

III.  *Application to Apache's Carrybacks*

The issue before us is whether, under section 172(b)(3), Apache may relinquish the carryback period for one portion of its net operating loss (the general portion, which has a two-year carryback period under section 172(b)(1)(A)), while retaining the carryback period for another portion of its net operating loss (the portion constituting a specified

liability loss, which has a ten-year carryback period under section 172(b)(1)(C)).  Based on the text, structure, and context of the statute, as well as caselaw, history, and the Government's own prior position, we conclude that it may.

### A.    *Multiple Carryback Periods*

### 1.    *Statutory Text, Structure, and Context*

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)); *see also Universal Seismic Assocs., Inc. v. Harris Cnty.* (*In re Universal Seismic Assocs., Inc.*), 288 F.3d 205, 207 (5th Cir. 2002) ("[I]n any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress." (quoting *Whatley v. Resol. Tr. Corp.*, 32 F.3d 905, 909 (5th Cir. 1994))).

### a.    *Section 172(b)(3)*

As we have already noted, section 172(b)(3) provides, in relevant part, as follows: "Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year."  The text of the provision identifies first who may make an election—"Any taxpayer entitled to a carryback period under paragraph (1)"—and then what the election permits the taxpayer to do—"to relinquish the entire carryback period."  I.R.C. § 172(b)(3).  It is constructed such that "the entire carryback period" refers back to "a carryback period under paragraph (1)" to which the taxpayer is entitled.

### b.    *Section 172(b)(1)*

We turn, therefore, to section 172(b)(1) to determine what carryback period or periods it provides to taxpayers. The Dictionary Act makes clear that "words importing the singular include and apply to several persons, parties, or things" unless context indicates otherwise. 1 U.S.C. § 1; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 164–65 (2021) ("Suppose a statute made it a crime to vandalize 'a' bank.  Under the Dictionary Act, someone who vandalizes five banks could not avoid prosecution on the ground that he vandalized more than one.").  Thus, the reference to "a carryback period" in section 172(b)(3) would be

consistent with multiple carryback periods if section 172(b)(1) provides for such periods, which as we will see in a moment it does.

Section 172(b)(1) is titled "Years to which loss may be carried," and it sets out carrybacks of varying lengths for different portions of a net operating loss. As we have discussed, under the general rule in section 172(b)(1) a net operating loss may be carried back for two years. I.R.C. § 172(b)(1)(A)(i) (providing that a net operating loss "shall be a net operating loss carryback to each of the 2 taxable years preceding the taxable year of such loss"). There is no carryback for a so-called REIT year. I.R.C. § 172(b)(1)(B)(i). In addition, the carryback is ten years for specified liability losses, I.R.C. § 172(b)(1)(C), variable for excess interest losses, I.R.C. § 172(b)(1)(D), three years for eligible losses, I.R.C. § 172(b)(1)(E), and five years for farming losses, I.R.C. § 172(b)(1)(F).

By our count, paragraph (1) of section 172(b) establishes at least six potential carrybacks of different lengths. The same taxpayer could be entitled to several of these in the same year. This fact strongly suggests that paragraph (1) establishes distinct "carryback periods"— i.e., multiple carryback periods—for purposes of the election in section 172(b)(3).

Of course, paragraph (1) refers to "carryback[s]" rather than "carryback periods" and the term "carryback period" is not defined by the Code. But the term's ordinary meaning confirms that paragraph (1) establishes distinct carryback periods.

When the statute does not define a term, "we ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted [the relevant provision]." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433–34 (2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see also Dynamo Holdings Ltd. P'ship. v. Commissioner*, 150 T.C. 224, 234 (2018) (reviewed).

A period is a division of time. *See Period*, *Merriam Webster's Collegiate Dictionary* (10th ed. 1993) ("a chronological division"); *Period*, *Black's Law Dictionary* (6th ed. 1990) ("Any point, space, or division of time."); *Period*, *The Random House Dictionary of the English Language* (2d ed. 1987) ("any specified division or portion of time"); *Period*, *The American Heritage Dictionary of the English Language* (1st ed. 1969) ("1. An interval of time characterized by the occurrence of certain conditions or events."). And a carryback is a loss amount that can be deducted for prior years. *See Carry-back*, *Black's Law Dictionary* (6th

ed. 1990) ("A provision in the tax law which allows a taxpayer to apply a net operating loss in one year to the three immediately preceding tax years, beginning with the earliest year."); *Carryback*, *The Random House Dictionary of the English Language* (2d ed. 1987) ("(in U.S. income-tax law) a special provision allowing part of a net operating loss or of an unused credit in a given year to be apportioned over one or two preceding years, chiefly in order to ease the tax burden"); *cf. Carryover*, *Merriam Webster's Collegiate Dictionary* (10th ed. 1993) ("something retained or carried over"); *Carryover*, *The American Heritage Dictionary of the English Language* (1st ed. 1969) ("1. A part or quantity, as of goods or commodities, left over or held for future use. 2. *Accounting.* A sum transferred to a new column, page, book, or account."). A carryback period, then, is a division of time to which a loss amount can be carried back.[6]

Given this definition, the ordinary meaning of the term "carryback period" corresponds precisely with the content of section 172(b)(1). Each of the subparagraphs of section 172(b)(1) discussed above sets out a different division of time (whether two, three, five, or ten years) in which a loss amount may be carried back. Therefore, each of these divisions of time constitutes a distinct carryback period to which a taxpayer is "entitled . . . under paragraph (1)" within the meaning of section 172(b)(3).

c. *Section 172(f)(5)*

The structure of section 172—especially section 172(f)(5) and analogous provisions—supports this reading as well. A taxpayer has only one net operating loss for each year, and section 172(b)(2), which sequences the years to which a loss is carried, provides a rule that applies to "[t]he entire amount" of that net operating loss. For a portion of a net operating loss to be carried back separately under section 172(b)(2), therefore, a special rule is required. Section 172(f)(5) provides that rule for specified liability losses: "For purposes of applying subsection (b)(2), a specified liability loss for any taxable year shall be treated as a *separate* net operating loss for such taxable year . . . ."

---

[6] The meanings of these terms have not changed since the precursor to section 172(b)(3) was enacted. *See Period*, *Black's Law Dictionary* (5th ed. 1979); *Period*, *The Random House College Dictionary* (1980) ("any specified division or portion of time"); *Carry-back*, *Black's Law Dictionary* (5th ed. 1979) ("Provision in tax law which permits taxpayer to apply net operating loss in one year to recomputation of tax of several preceding taxable years."); *Carryover*, *The Random House College Dictionary* (1980) ("that which is carried over, as to a later time, account, etc.").

(Emphasis added.)  Analogous provisions exist for eligible losses and farming losses.  I.R.C. § 172(b)(1)(E)(iv), (h)(2).

### d.    *Additional Context*

By contrast, no rule similar to that of section 172(f)(5) is required for section 172(b)(3), because the latter provision, together with section 172(b)(1), already contemplates multiple carryback periods working in tandem.  Additionally, given that section 172(f)(5) and similar rules signal that portions of net operating losses are meant to be treated separately from the rest of the net operating loss—i.e., given that under those provisions and under section 172(b)(1) the losses are treated as separate losses and carried back for a different number of years—it is logical that those portions would have separate carryback periods as well.

This analysis suffices to conclude that a taxpayer may be entitled to multiple carryback periods under section 172(b)(1) and thus for purposes of section 172(b)(3).[7]  But there is more.

### 2.    *Judicial Interpretations of Section 172*

Perhaps unsurprisingly given the discussion above, two decisions from the courts of appeals, and one from this Court, confirm that section 172(b)(1) sets out different carryback periods for different types of losses.  In *NextEra Energy, Inc. v. United States*, 893 F.3d 1353, 1356 (11th Cir. 2018), the U.S. Court of Appeals for the Eleventh Circuit wrote that "certain types of net operating losses are allowed a longer carryback period."  Continuing, it noted that "[a]t all times relevant to this case, Section 172(f) of the tax code provided for one of the extended carryback periods.  This section defined a 'specified liability loss,' which had a carryback period of ten years."  *Id.* (footnote omitted) (citing I.R.C. § 172(b)(1)(C), (f)).

---

[7] *Plumb v. Commissioner*, 97 T.C. 632 (1991), supports this reading.  In *Plumb*, we determined that a taxpayer could not relinquish the carryback period for his regular net operating loss while maintaining the carryback period for his alternative minimum tax net operating loss.  To arrive at that conclusion, we reasoned that "[t]he statute deals with but a single carryback period of 3 years.  An effective election under section 172(b)(3)(C) must of necessity relate to that carryback period, and would preclude any carryback whether it be the regular NOL or the alternative minimum tax NOL."  *Plumb*, 97 T.C. at 638.  What we face here is not the single carryback period present in *Plumb*, but multiple carryback periods.  Thus, the reasoning in *Plumb* favors the conclusion we reach.

The U.S. Court of Appeals for the Tenth Circuit likewise has pointed out that "[t]he tax code permits a longer carryback period for a special category of losses, so-called 'specified liability losses.'" *Barrick Res. (USA) Inc. v. United States*, 529 F.3d 1252, 1254 (10th Cir. 2008). "Unlike ordinary net operating losses, [specified liability] losses have a ten-year carryback period." *Id.* at 1258.

We ourselves have stated, in a case regarding bad debt losses under prior law, that different losses can have different carryback periods:

> [G]enerally, the carryback period for a NOL is 3 years and the carryover period is 15 years.[8]  Section 172(b)(1)(L) provides a special rule with respect to the bad debt losses of commercial banks: The portion of the NOL of a commercial bank that is attributable to bad debt losses is prescribed a carryback period of 10 years and carryover period of 5 years.

*Norwest Corp. v. Commissioner*, 111 T.C. 105, 164 (1998).  Each of these decisions strongly supports the view that section 172(b)(1) sets out different carryback periods for different types of losses.

Of course, *NextEra Energy*, *Barrick Resources*, and *Norwest* did not address head-on the question of whether different carryback periods can be relinquished independently under section 172(b)(3).  But they reflect the considered judgment of those courts as to how the text of section 172 operates; that is, they confirm that section 172(b)(1) sets out different carryback periods for different types of losses.  And they therefore inform the proper interpretation of section 172(b)(3).  We see no reason for ignoring or rejecting the views of two courts of appeals and our precedent in pursuit of some other interpretation.

### 3.  *Legislative History*

Finally, "[f]or those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), this reading of the statute is supported by statements that were made in connection with the 1997 amendments to section 172.  Those amendments (1) lengthened the default carryforward period from 15 years to 20 years, (2) shortened the default carryback period from 3 years to 2 years, and (3) nevertheless

---

[8] These were the applicable periods before Congress amended the statute in 1997 to change the carryback period to 2 years and the carryover period to 20 years.

provided 3 years for certain portions of net operating losses related to casualty losses. *See* Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1082, 111 Stat. 788, 950.

The relevant congressional reports explained that the carryback provisions were intended to address typical business cycles, but that "allowing a two-year carryback of NOLs is sufficient to account for these business cycles," in part because "certain deductions . . . are granted *special, longer carryback periods* under present law (which are retained by the bill)." S. Rep. No. 105-33, at 184 (1997), *reprinted in* 1997-4 C.B. (Vol. 2) 1067, 1264 (emphasis added). And it further explained: "The bill does not apply to NOLs arising from casualty losses of individual taxpayers." *Id.*; *see also* H.R. Rep. No. 105-148, at 498–99 (1997), *as reprinted in* 1997 U.S.C.C.A.N. 678, 892–93 (providing similarly); Staff of J. Comm. on Tax'n, 105th Cong., General Explanation of Tax Legislation Enacted in 1997, JCS-23-97, at 268 (J. Comm. Print 1997) ("The Act does not apply to the carryback rules relating to REITs, specified liability losses, excess interest losses, and corporate capital losses."); H.R. Rep. No. 105-220, at 585 (1997) (Conf. Rep.), *reprinted in* 1997-4 C.B. (Vol. 2) 1457, 2055 ("In addition, the Senate amendment preserves the 3-year carryback for NOLs of farmers and small businesses attributable to losses incurred in Presidentially declared disaster areas. . . . The conference agreement follows the Senate amendment.").

These statements are consistent with the understanding that there can be different carryback periods for a year, that they operate independently of each other, and that taxpayers were expected to be able to continue to avail themselves of the special extended carryback periods in section 172(b)(1), even as the default shifted toward carryforwards.

B. *Relinquishing Individual Carryback Periods*

Having concluded that section 172(b)(1) sets out distinct carryback periods for different kinds of losses, and thus that a taxpayer may be entitled to multiple carryback periods under section 172(b)(1) for the same year, we now explain why it follows that section 172(b)(3) permits the taxpayer to relinquish those carryback periods individually, as Apache did here.

1. *Text of Section 172(b)(3)*

Section 172(b)(3) allows a taxpayer to "relinquish the entire carryback period with respect to a net operating loss for any taxable

year." As discussed in Part III.A above, "the entire carryback period" refers to "a carryback period under paragraph (1)" to which the applicable taxpayer is entitled. I.R.C. § 172(b)(3); *see also MCR Oil Tools, L.L.C. v. U.S. Dep't of Transp.*, 110 F.4th 677, 692 (5th Cir. 2024) ("'The,' by . . . contrast [to 'a'], 'indicat[es] that a following noun or noun equivalent is definite or has been previously specified by context.'" (quoting *Nielson v. Preap*, 586 U.S. 392, 408 (2019))). Thus, "the entire carryback period" that may be relinquished under section 172(b)(3) is the carryback period to which the taxpayer is entitled under section 172(b)(1).

When a taxpayer is entitled to multiple carryback periods under section 172(b)(1), section 172(b)(3) applies to each individual period, such that the taxpayer may elect to retain or relinquish the period independent of the others.[9] *See Niz-Chavez*, 593 U.S. at 164 ("[A] statute using the singular 'a' can apply to multiple persons, parties, or things."); *Commissioner v. Kelley*, 293 F.2d 904, 912 (5th Cir. 1961) ("The indefinite article 'a' says in plain language that there may be two or more substantial parts."), *aff'g* 32 T.C. 135 (1959).

Reading section 172(b)(3) as providing a taxpayer with an all or nothing election—relinquish each and every one of the periods set out in section 172(b)(1) or be stuck with all of them—makes little sense given the number of different carryback periods set out in section 172(b)(1). It also makes little sense in view of Congress's going out of its way to give taxpayers additional choices when it comes to specified liability losses, *see* I.R.C. § 172(f)(6), eligible losses, *see* I.R.C. § 172(b)(1)(E)(iv), and farming losses, *see* I.R.C. § 172(h)(2).[10] The Government itself recognized as much when interpreting a prior version of the statute.

---

[9] An interpretation requiring collective relinquishment would make little sense. Consider the following example of a rule with similar wording:

> Any employee entitled to a day of sick leave under paragraph (1) may elect to donate the entire day of sick leave with respect to any employment year to another employee.

There is no reason to read this rule to require an employee to donate either all of his or her days of sick leave together or none at all. Rather, the best reading of the text is that the employee may decide to donate each day individually, so that the employee can donate no sick leave or one or more days of sick leave at his or her option. But the employee may not donate just some hours of leave from a particular day.

[10] The Court's reasoning in *Plumb* also cuts in favor of Apache here. In *Plumb*, 97 T.C. at 638, only one carryback period existed for the taxpayer to relinquish, and

2. *The Government's Own Interpretation*

The Secretary read paragraphs (1) and (3) of section 172(b) to permit an election with respect to losses with one carryback period and not others when promulgating Treasury Regulation § 1.172-13. That regulation was promulgated before Congress adopted the 1990 amendments to section 172. *See United Dominion*, 532 U.S. at 829 n.6 (discussing amendments). The regulation was finalized in 1986. T.D. 8096, 1986-2 C.B. 39, 51 Fed. Reg. 30,481 (Aug. 27, 1986). It addresses product liability losses, a category that was later made part of a taxpayer's specified liability loss by section 172(f)(1)(A). *See United Dominion*, 532 U.S. at 829 n.6. With respect to the section 172(b)(3) election (which, in 1986, was housed in section 172(b)(3)(C)), the regulation provides:

> If a taxpayer sustains during the taxable year both a net operating loss not attributable to product liability and a product liability loss . . . , an election pursuant to section 172(b)(3)(C) (relating to election to relinquish the entire carryback period) does not preclude the product liability loss from being carried back 10 years . . . .

Treas. Reg. § 1.172-13(c)(4).[11] That regulation has not been rescinded. If Apache had claimed a specified liability loss under section 172(f)(1)(A)

---

thus his election relinquished the whole carryback period for both regular taxes and the alternative minimum tax. But nothing in the Court's reasoning in *Plumb* requires that only one carryback period can exist, or that the text of section 172(b)(3) requires that all carryback periods be relinquished together. Instead, *Plumb* is perfectly consistent with the possibility of multiple carryback periods and elections with respect to each.

[11] The regulation was adopted in response to a comment that posed precisely the question now before the Court: "If a taxpayer has both a net operating loss carryback and a product liability loss carryback, and elects to forego the carryback of the net operating loss pursuant to section 172(b)(3)(C), the question is whether the product liability loss can still be carried back ten years under section 172(b)(1)(I)." Pet'r's Mot. for Partial Summ. J. Ex. B (Doc. 36) (Letter from R. Brown, Peat, Marwick, Mitchell & Co. to the Internal Revenue Service (Aug. 12, 1983)). The commenter answered the question in the affirmative. *See id.* ("We believe the answer should be yes.").

The Treasury Department and the IRS agreed:

> Another commentator suggested that the final regulations be clarified with respect to the interaction of the election under section 172(b)(3)(C) (relating to election to relinquish the entire

instead of section 172(f)(1)(B), the Commissioner would be bound to permit Apache's carryback.

Moreover, there is no meaningful principle by which to justify treating product liability losses under section 172(f)(1)(A) differently, for purposes of the carryback period election, from other specified liability losses under section 172(f)(1)(B). Congress joined both categories together in 1990, and their carryback periods are provided by the same subparagraph of section 172(b)(1). "Thus, in all relevant respects, the provisions on PLLs and SLLs are the same." *United Dominion*, 532 U.S. at 829 n.6 (cleaned up).

### 3. *Additional Considerations*

In addition, courts assume that Congress was aware of the product liability loss regulation when it adopted the specified liability loss concept in 1990. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998); *see also* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 322–26 (2012) (discussing the prior-construction canon). As we have already noted, the regulation applicable to product liability losses was finalized in 1986. Four years later, Congress folded product liability losses into specified liability losses, expanding the category of losses eligible for the ten-year carryback period. While the presence of the regulation may not be sufficient to invoke a strong form of the prior-construction or ratification canon, it certainly appears that, when Congress amended section 172, it made no effort to reject the administrative interpretation of the text that became section 172(b)(3).

Nor are we aware of any policy reason indicating that Congress wished to tie the hands of taxpayers who had multiple carryback periods under section 172(b)(1). By adopting the predecessor of section 172(b)(3) in the first instance, Congress demonstrated that it was sensitive to taxpayers facing a retroactive loss of favorable tax attributes because of future losses and wished to ameliorate their position. The

carryback period) and the election under section 172(j)(3) (relating to election to forgo 10-year product liability loss carryback period). The final regulations are clarified by providing in § 1.172-13(c)(4) that the election pursuant to section 172(b)(3)(C) does not preclude a product liability loss from being carried back 10 years.

Preamble, T.D. 8096, 1986-2 C.B. at 39, 51 Fed. Reg. at 30,481. The "election under section 172(j)(3)" referenced in the preamble was similar to the election now provided by section 172(f)(6), discussed above.

Commissioner offers no valid reason why Congress would be stingy in its solution and make the election all or nothing, regardless of how many carryback periods a taxpayer had under section 172(b)(1).

As far as we can tell, the best the Commissioner can come up with is a claim of administrative inconvenience. In the Commissioner's telling, it would be challenging to track which carryback periods a taxpayer has relinquished and which it has retained. The argument does not persuade. Section 172(b)(1) is clear in the carryback periods it establishes. And a taxpayer who wishes to relinquish one or more specific periods must do so clearly (for example, by expressly cross-referencing the subparagraph under section 172(b)(1) that it wishes to relinquish). If the taxpayer makes no specific reference to one or more specific carryback periods in its election, the Commissioner would be entitled to treat the election as applying to all of the carryback periods to which the taxpayer is otherwise entitled.

In any event, the Commissioner already needs to track separately whether a taxpayer has retained its original carryback period for specified liability losses or has given that period up in favor of the general carryback rule. Continuing to track similar choices under section 172(b)(3) would not appear to present any undue administrative hardship.

C.   *Application*

In view of the foregoing, we conclude that Apache was permitted to elect to relinquish the two-year carryback period for its standard net operating loss without waiving the ten-year carryback for its specified liability loss. Accordingly, the relief it seeks in its Motion must be granted.

IV.   *Tiebreaking Principle*

To our mind, the foregoing analysis compels us to grant Apache's Motion. Even if the interpretative question before us is viewed as a close call, however, longstanding precedent would instruct us to construe the relevant provisions against the Commissioner. *See, e.g., Gould v. Gould*, 245 U.S. 151, 153 (1917) ("In case of doubt [statutes levying taxes] are construed most strongly against the government, and in favor of the citizen."); *United States v. Merriam*, 263 U.S. 179, 187–88 (1923) (applying the principle set out in *Gould* and noting with approval that under English law "if the crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however

apparently within the spirit of the law the case might otherwise appear to be" (quoting *Partington v. Att'y Gen.*, L.R. 4 H.L. 100, 122 (1869))); *see also, e.g.*, *Security Bank Minn. v. Commissioner*, 994 F.2d 432, 436 (8th Cir. 1993) (interpreting complex interrelated statutory provisions and observing that "when there is a reasonable doubt about the meaning of a revenue statute, the doubt is resolved in favor of those taxed"), *aff'g* 98 T.C. 33 (1992); *Leavell v. Blades*, 141 S.W. 893, 894 (Mo. 1911) ("When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it").

At least one current member of the Supreme Court has applied this principle to the very statutory provision now before the Court. *See United Dominion*, 532 U.S. at 839 (Thomas, J., concurring) ("At a bare minimum, in cases such as this one, in which the complex statutory and regulatory scheme lends itself to any number of interpretations, we should be inclined to rely on the traditional canon that construes revenue-raising laws against their drafter."). To the extent this case presents a close question of interpretation, section 172 should be construed in favor of Apache.

V.      *A Brief Response to the Dissent*

The opinion concurring in part and dissenting in part (for convenience, dissent) appears to premise its conclusion in significant part on the fact that "[i]n 1976, when Congress enacted the carryback waiver rule that now appears in section 173(b)(3), an election under that rule was necessarily an all-or-nothing matter." *See* Halpern dissenting op. p. 25. And, in the dissent's view, "Congress has given no indication that the rule that started out all-or-nothing has not remained all-or-nothing." *See* Halpern dissenting op. p. 25.

We do not share the dissent's view of how the statute as it existed in 1976 worked. But, in any event, as the Supreme Court has said, "[t]he starting point in discerning congressional intent is the existing statutory text, . . . *and not the predecessor statutes.*" *Lamie*, 540 U.S. at 534 (emphasis added). We recently recognized the same point, *see United Therapeutics Corp. v. Commissioner*, 160 T.C. 491, 507 (2023) (noting that predecessor statutes may not be used to create ambiguity), and were affirmed by the U.S. Court of Appeals for the Fourth Circuit, *United Therapeutics Corp. v. Commissioner*, 105 F.4th 183, 189 (4th Cir. 2024) ("Predecessor statutes, in other words, may not be used to manufacture ambiguity.").

The years before us in this case are 2016 and 2017. The relevant provisions—section 172(b)(1), (2), and (3), as well as section 172(f)— were all amended after 1976 and before 2016, including a full reenactment of section 172(b) and (f) in 1990. Omnibus Budget Reconciliation Act of 1990 § 11811, 104 Stat. at 1388–530. Thus, while the text of the statute in 1976 offers historical context, it is not our focus. And, as we have explained, our own Court, courts of appeals, Congressional committees, and even the Government itself have read the post-1976 statutory provisions as we do.

The dissent also misreads section 172(f)(6). As we have explained, exemplifying Congress's solicitude for taxpayers who experience specified liability losses, that provision gives such taxpayers the choice to elect to waive the ten-year carryback under section 172(b)(1)(C). But the election does not eliminate the other carryback periods listed in section 172(b)(1) that might be available to those taxpayers. And whatever inference might arise from the text of section 172(f)(6) does not suffice to overcome the other textual indicators we have discussed, especially when, as the dissent seems to acknowledge, the reference to "any loss year" included there served largely as an effective date provision. *See* Revenue Act of 1978, Pub. L. No. 95-600, § 371(a)(1), 92 Stat. 2763, 2859 (defining the term "loss year" as "a taxable year beginning after September 30, 1979").

VI.    *Conclusion*

Section 172(b)(1)(C) provides a separate carryback period for specified liability losses. And section 172(b)(3) permits a taxpayer to relinquish "a carryback period" to which it is entitled, without specifying that all carryback periods for a given year must be relinquished together. Apache therefore was able to relinquish its normal net operating loss carryback period while retaining the ten-year carryback period for its specified liability loss. We will therefore grant Apache's Motion and deny the Commissioner's.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

URDA, *C.J.*, and KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, JONES, GREAVES, WEILER, WAY, LANDY, ARBEIT,

GUIDER, JENKINS, and FUNG, *JJ.*, agree with this opinion of the Court and BUCH, *J.*, agrees with Part IV.

MARSHALL and HALPERN, *JJ.*, concur in part and dissent in part.

BUCH, *J.*, concurring: We are confronted with a question of statutory interpretation with no clear answer. Congress wrote that a taxpayer "may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year." I.R.C. § 172(b)(3). And we are attempting to determine what Congress meant by its use of the indefinite article "a." Did it choose to refer to "a net operating loss" because there is only one net operating loss? If so, why did Congress choose an indefinite article instead of the definite article "the?" Or did it choose to refer to "a net operating loss" because the election to relinquish the carryback is made separately with respect to any one of several subtypes of net operating losses? The opinion of the Court and the dissent do an admirable job of wading through the evolution of the statute, the legislative history (for those who consider it to be relevant), and the various semantic canons. And their conflicting answers are equally plausible.

Where there is doubt as to the meaning of a taxing statute, we have over a century of precedent that tells us how to resolve that doubt: Taxing statutes are to be construed against the sovereign. Before there was an income tax, courts were called upon to decide the scope of tariffs. When effective dates were unclear, they were resolved against the government. *See, e.g.*, *United States v. Wigglesworth*, 28 F. Cas. 595, 597 (C.C.D. Mass. 1842) (No. 16,690) ("In every case, therefore, of doubt, such statutes are construed most strongly against the government, and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import.") When it was unclear whether a particular product fell within the definition of goods subject to a higher or lower tariff, that doubt was resolved in favor of the importer. *See, e.g.*, *Am. Net & Twine Co. v. Worthington*, 141 U.S. 468, 474 (1891) ("[W]e should still feel obliged to resolve that doubt in favor of the importer, since the intention of congress to impose a higher duty should be expressed in clear and unambiguous language."). When income taxes came into effect, this principle remained the same when deciding what fell within the definition of income. *See, e.g.*, *Gould v. Gould*, 245 U.S. 151, 153 (1917) ("In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen.").

The opinion of the Court and the dissent offer equally plausible interpretations. "At a bare minimum, in cases such as this one, in which the complex statutory and regulatory scheme lends itself to any number of interpretations, we should be inclined to rely on the traditional canon that construes revenue-raising laws against their drafter." *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 839 (2001) (Thomas, J., concurring). For that reason, I join Part IV of the opinion of the Court.

24

HALPERN, *J.*, with whom MARSHALL, *J.*, joins, concurring in part and dissenting in part: I agree with the majority that the Commissioner's Motion for Partial Summary Judgment should be denied. The Commissioner seeks a ruling that Apache relinquished the carryback of its *entire* net operating loss (NOL) for each of 2016 and 2017. The election statements included with Apache's returns for those years, however, show that Apache intended to relinquish the carryback of only *part* of its NOL for each year. Those statements cannot have effected valid elections to relinquish the carryback of Apache's NOLs altogether. They were either valid elections to relinquish only part of Apache's NOL for each year—as Apache intended and the majority holds—or they were invalid because Apache manifestly attempted to make elections the law does not allow. *See Plumb v. Commissioner*, 97 T.C. 632, 640 (1991) ("[A] taxpayer who attempts to make an election that is not legally available to him will be treated as having made no election . . . ."); *see also GWA, LLC v. Commissioner*, T.C. Memo. 2025-34 (following *Plumb*). Either way, the Commissioner's Motion should be denied.

I disagree, however, with the majority's disposition of *Apache's* Motion for Partial Summary Judgment. *That* Motion seeks a ruling that Apache validly elected to relinquish the carryback of only part of its NOL for each of 2016 and 2017. The election allowed by section 172(b)(3), as I read that provision, necessarily relinquishes the carryback of the electing taxpayer's entire NOL. Section 172(b)(3) provides: "Any taxpayer entitled to a carryback period under [section 172(b)(1)] may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year." Because any NOL has only one carryback period, an election under section 172(b)(3) necessarily relinquishes the carryback of the taxpayer's entire NOL. Even if I were persuaded that a single NOL could have multiple carryback periods, I would still read section 172(b)(3) to say that a taxpayer entitled to one or more carryback periods can elect to relinquish the carryback period or periods to which the taxpayer is entitled.

Because Apache attempted to make an election legally unavailable to it, its election was invalid. Apache's Motion should also be denied.

I.     *An NOL Has Only One Carryback Period.*

In 1976, when Congress enacted the carryback waiver rule that now appears in section 172(b)(3), an election under that rule was necessarily an all-or-nothing matter. As Apache acknowledges, at that time "a single taxpayer was not entitled to more than one carryback period with respect to any one NOL." Different taxpayers could carry their losses back for different periods, but any given taxpayer's NOL had to be carried back a specified number of years.[1] That explains Congress's repeated use of the singular term "carryback period" in the text of the waiver rule. Under the rule as initially enacted, a taxpayer who elected to waive its carryback relinquished the carryback of its *entire* NOL. While some aspects of the law have changed since 1976, Congress has given no indication that the rule that started out all-or-nothing has not remained all-or-nothing.

The possibility that portions of a single NOL could be carried back to different years arose for the first time with the Revenue Act of 1978 (1978 Act), Pub. L. No. 95-600, 92 Stat. 2763. As part of that legislation, Congress provided special rules for losses attributable to product liability claims. As amended by the 1978 Act, section 172 allowed "product liability losses" (PLLs) to be carried back ten years rather than the usual three.[2]

Once different portions of a single NOL could be carried back to different years, did that NOL have different *carryback periods*? Certainly, Congress did not say so explicitly. In fact, the predecessor to section 172(f)(6), enacted in 1978, indicates that, after 1978, a single NOL continued to have just one carryback period—even if different portions of that NOL could be carried back to different years.[3]

When Congress enacted the PLL rules, it allowed a taxpayer with a PLL to waive the special ten-year carryback. Section 172(i)(3), as enacted in 1978, provided:   "Any taxpayer entitled to a 10-year

---

[1] The majority does "not share" my view (and Apache's) "of how the statute as it existed in 1976 worked." Op. Ct. p. 19. But the majority offers no explanation of how its view differs from mine and Apache's.

[2] As the majority observes, in 1997 Congress revised the default rule so that portions of an NOL not covered by a special rule could be carried back only two years.

[3] The majority claims that I have "misread[] section 172(f)(6)," Op. Ct. p. 20, but (again) offers no explanation of why, in its view, my reading of the provision is incorrect.

carryback under subsection (b)(1)(H) from any loss year may elect to have the carryback period *with respect to such loss year* determined without regard to subsection (b)(1)(H)." 1978 Act § 371(b), 92 Stat. at 2859 (emphasis added). (Section 172(b)(1)(H), the predecessor of section 172(b)(1)(C), defined the term "loss year" to mean "a taxable year beginning after September 30, 1979." 1978 Act § 371(a), 92 Stat. at 2859. For present purposes, all these years later, we can treat "loss year" as synonymous with "taxable year.") Section 172(f)(6), as in effect for the years in issue, provides the same waiver rule for taxpayers like Apache with a specified liability loss (SLL), allowing them to elect to "have the carryback period [for the] loss year determined without regard to [section 172(b)(1)(C)]." If a taxpayer with a PLL that was part of a larger NOL had *two* carryback periods (a ten-year period applicable to the PLL and a three-year period applicable to the rest of the NOL), Congress would have allowed the taxpayer to elect to have the carryback period *with respect to the PLL* determined without regard to the ten-year carryback rule. But that is not what section 172(i)(3) said (or what section 172(f)(6) says). Instead, a taxpayer with a PLL or an SLL that was part of a larger NOL could elect to have *the* carryback period *with respect to the taxable year* determined without regard to the ten-year carryback rule that would otherwise apply to the PLL or the SLL. That shows that, even after 1978, a taxpayer that incurred an NOL for a taxable year had just one carryback period for the year, and thus only one carryback period for the NOL it incurred for the year.

If a single NOL had just one carryback period even after 1978, as indicated by section 172(f)(6) and its predecessor, that would explain why Congress left the text of the carryback waiver rule unchanged in 1978. The 1978 Act redesignated the carryback waiver provision (moving it from section 172(b)(3)(E) to section 172(b)(3)(C)) but left its text unchanged. 1978 Act § 703(p)(1)(B), 92 Stat. at 2943. It continued to allow a taxpayer entitled to *a carryback period* (singular) to relinquish *the carryback period* to which the taxpayer was entitled.

Even leaving aside the clear implication of section 172(i)(3), as enacted in 1978, Congress's failure to revise the carryback waiver rule further supports the notion that Congress did not intend to allow a taxpayer with a PLL that was part of a larger NOL to carry the PLL back ten years while electing to forgo the carryback of the rest of its NOL. If Congress had intended to allow an election to that effect, applicable to only *part* of the taxpayer's NOL, I would have expected

Congress to make that intention explicit by revising the text of the carryback waiver rule.[4]

This Court relied on similar reasoning in *Plumb*. In that case, we addressed a purported election by taxpayers to forgo the carryback of their regular tax NOL but not their alternative minimum tax (AMT) NOL. We concluded that the law did not allow a "split" election to that effect. "Had Congress intended to make available two elections, with such potentially disparate results," we reasoned, "one would certainly have expected that it would have explicitly so stated in the [Tax Equity and Fiscal Responsibility Act of 1982], which for the first time permitted carrybacks and carryovers of alternative minimum tax NOLs." *Id.* at 638–39. We thus held that, "[i]n the absence of any such clear expression of legislative intention in so complex a field, . . . there is but a single election [to forgo the carryback of an NOL], and that an effective election . . . must be applicable to both the regular NOL and the alternative minimum tax NOL." *Id.* at 639.

The same can be said about PLLs under the 1978 Act and about SLLs under the law in effect for the years before us. In *Plumb*, we reasoned that, if Congress had intended, after it became possible to carry AMT NOLs to other years, to allow a taxpayer to make a split election under the predecessor of section 172(b)(3) that applied to a taxpayer's regular tax NOL but not its AMT NOL, Congress would have said so explicitly. Similarly, if Congress had intended, after 1978, that an NOL that included a PLL have two carryback periods and that the taxpayer could elect to forgo the carryback of the non-PLL portion of its NOL without affecting the carryback of its PLL, again, Congress would have said so.

Curiously, the majority claims support from *Plumb* for *its* position that "a taxpayer may be entitled to multiple carryback periods." Op. Ct. p. 12. In *Plumb*, we accepted that the taxpayers had a single carryback period for both their regular tax NOL and their AMT NOL because each amount could be carried back three years. On the premise that "[w]hat

---

[4] My analysis, unlike the argument the Supreme Court rejected in *Lamie v. United States Trustee*, 540 U.S. 526 (2004), does not seek to create ambiguity by comparing an existing statutory text to a predecessor. In *Lamie*, 540 U.S. at 530, the existing statutory text reflected a "substantive alteration" of the predecessor statute. By contrast, Congress has made no substantive alteration to the carryback waiver rule since its enactment in 1976. The *Lamie* Court also acknowledged that it would be "fair to doubt" that Congress would effect a significant change in the law without announcing it. *Id.* at 539.

we face here is not the single carryback period present in *Plumb*, but multiple carryback periods," the majority concludes that "the reasoning in *Plumb* favors" its position that an NOL can have multiple carryback periods. Op. Ct. note 7.

The majority assumes the point in issue with its premise that, in this case, we face "multiple carryback periods." At most, the majority offers grounds to distinguish *Plumb*. In the absence of any election in *Plumb*, the taxpayers' regular tax NOL and their AMT NOL would both have carried back three years. In the absence of any election by Apache, its SLLs would have carried back ten years and the rest of its NOLs would have carried back two years. But that distinction does not undermine the lesson I draw from *Plumb*: If Congress intended that changes to other provisions would significantly affect the consequences of an election under section 172(b)(3) or its predecessor—allowing split elections of a type not previously allowable—it is reasonable to suppose that Congress would have made its intention explicit. Again, Congress did not explicitly state that its 1978 amendments to section 172 created the possibility that a single NOL could have more than one carryback period. Indeed, it indicated in the predecessor to section 172(f)(6) that a taxpayer still had just one carryback for a taxable year and thus just one carryback period for any NOL it incurred for that year.[5]

Just as I am not persuaded that *Plumb* affirmatively supports the proposition that, after 1978, a single NOL could have multiple carryback periods, I am also unpersuaded by the majority's other arguments for that proposition.

The majority reasons that section 172(b)(1)'s mandate that different portions of an NOL be carried to different years "strongly suggests" that that provision "establishes distinct 'carryback periods.'" Op. Ct. p. 10. As the majority acknowledges, however, "the term 'carryback period' is not defined by the Code." Op. Ct. p. 10. So the majority purports to look to the term's "ordinary meaning." Op. Ct. p. 10.

---

[5] In any event, the prospect that *Plumb* might be distinguishable does not mean that it *supports* the majority's position. The majority's treatment of *Plumb* is one of several instances in which the majority views any authority not contrary to its position as affirmatively supporting its position.

The term "carryback period," however, *has* no ordinary meaning. It is a specialized term in the tax law.[6] The majority conjures a purported ordinary definition of carryback period by consulting four dictionaries. Not surprisingly, none defines "carryback period." The majority's proposed definition—"a division of time to which a loss amount can be carried back," Op. Ct. p. 11—does not appear in any of the dictionaries the majority cites. But the majority *does* find separate definitions of "carryback" and "period." A "period," *Black's Law Dictionary* tells us, is a "division of time." *Period, Black's Law Dictionary* (6th ed. 1990). *Black's* also provides a definition of "carryback." So does *The Random House Dictionary of the English Language.* Neither of those dictionaries, however, gives us an "ordinary" meaning of "carryback." Each identifies the term as a tax law term.[7] And the definition each dictionary provides for "carryback" does not accurately reflect the tax law in effect when the dictionary was published.

*Black's* defines "carryback" as "[a] provision in the tax law which allows a taxpayer to apply a net operating loss in one year to the three immediately preceding tax years, beginning with the earliest year." *Carry-back*, *Black's Law Dictionary* (6th ed. 1990). By 1990, of course, different portions of a single NOL could be carried back different numbers of years. The general three-year carryback rule was not uniform. So *Black's* description of the "provision in the tax law" by which it defines "carryback" did not accurately describe that provision. But we can forgive *Black's*—a general reference source—for its imprecision in defining a specialized tax law term. More to the point, *Black's* definition of "carryback" refers to the application of "a net operating loss" to offset income of prior years. It makes no reference to loss *amounts*. *Black's* definition of "carryback" thus supports the proposition that a single NOL has just one carryback period.

Random House defines "carryback" as "a special provision [in U.S. income-tax law] allowing part of a net operating loss or of an unused credit in a given year to be apportioned over one or two preceding years." *Carryback, The Random House Dictionary of the English Language* (2d ed. 1987). The Random House definition thus applies to net operating

---

[6] I find it difficult to imagine passersby on the street or shoppers at market conversing about "carryback periods."

[7] Thus, in the majority's tautological reasoning, the tax law looks to the "ordinary" meaning of "carryback period," and the ordinary meaning looks to the tax law.

losses and credits—even though separate carryback rules applied to each. And the general carryback rule for losses in 1987 required a loss to be carried back to the *third* preceding year—not just the first or second preceding year. The Random House definition of "carryback," like *Black's*, makes no mention of "loss amounts." It *does* refer to the apportionment of parts of a loss or credit among prior years. I take that to refer to the ability to carry a loss or credit from earlier carryback years to more recent years when the taxpayer's income or tax liability for the earlier year is not sufficient to absorb the loss or credit. The reference to the apportionment of parts of a loss or credit among different years does not, to my mind, establish that a net operating loss had more than one carryback period. More generally, I would not view Random House as a reliable source for answering that question.

Next, the majority claims that "[t]he structure of section 172—especially section 172(f)(5) and analogous provisions" supports its reading of section 172(b)(1) as creating separate carryback periods. Op. Ct. p. 11. Section 172(f)(5) provides special treatment of SLLs under section 172(b)(2). Section 172(b)(2) requires the entire amount of an NOL to be carried to the earliest year to which the loss can be carried. If that rule were applied without modification to a taxpayer with an NOL that consisted in part of an SLL, the rule could be read to require the taxpayer to carry its entire NOL back to the tenth preceding year—the earliest of the years to which (a portion of) the loss could have been carried under section 172(b). To foreclose that possibility, section 172(f)(5) provides that, "[f]or purposes of applying subsection (b)(2), a specified liability loss for any taxable year shall be treated as a separate net operating loss for such taxable year to be taken into account after the remaining portion of the net operating loss for such taxable year."[8] Thus, a taxpayer with an NOL that consists, in part, of an SLL first carries the rest of its NOL back the appropriate number of years (generally two) and then carries its SLL back ten years.

The majority reasons that "no rule similar to that of section 172(f)(5) is required for section 172(b)(3), because the latter provision, together with section 172(b)(1), already contemplates multiple carryback periods working in tandem." Op. Ct. p. 12. Again, the majority assumes the point in issue. *If* the different years to which portions of a loss can be carried back under section 172(b)(1) define

---

[8] As the majority notes, analogous rules apply when an NOL includes other amounts subject to special carryback rules. *See* § 172(b)(1)(E)(iv) (regarding "eligible loss[es]"), (h)(2) (regarding "farming losses").

different carryback periods, then it would be unnecessary to treat those portions of an NOL as separate NOLs for purposes of section 172(b)(3). But it would *also* be unnecessary to treat different portions of an NOL as separate NOLs for purposes of section 172(b)(3) if the NOL had just one carryback period and Congress intended an election under section 172(b)(3) to apply to the entire NOL. In other words, the absence of a "rule similar to that of section 172(f)(5) . . . for section 172(b)(3)" does not favor the majority's position over my position. That section 172(f)(5) treats an SLL as a separate NOL only for purposes of section 172(b)(2) and not also for purposes of section 172(b)(3) is equally compatible with either position. It cannot be read to favor one position over the other. Once again, the majority claims affirmative *support* from an authority simply because that authority does not *refute* its position. By that reasoning, I could claim that section 172(f)(5) and the analogous provisions dealing with eligible losses and farming losses support the position that an NOL has only one carryback period so that an election under section 172(b)(3) necessarily relinquishes the carryback of the taxpayer's entire NOL.

The majority also relies on three opinions in which this Court and two appellate courts described portions of NOLs that could be carried back longer than the usual number of years as having their own carryback periods. As the majority acknowledges, however, none of those opinions "address[ed] head-on the question of whether different carryback periods can be relinquished independently under section 172(b)(3)." Op. Ct. p. 13. Nothing turned on whether the NOLs of the taxpayers in those cases had just one carryback period or more than one. The majority views those opinions as "reflect[ing] the considered judgment of those courts as to how the text of section 172 operates." Op. Ct. p. 13. I agree that each opinion (in its entirety) reflects the court's considered judgment *on the issue before it* (which, in each case, involved the operation of section 172). But I doubt that the particular statements the majority singles out reflected the court's "considered judgment" on whether an NOL could have more than one carryback period. In none of the three cases was that question before the court. As the author of *Norwest Corp. v. Commissioner*, 111 T.C. 105, 164 (1998), I can say that, when I wrote that "[t]he portion of the NOL of a commercial bank that is attributable to bad debt losses is prescribed a carryback period of 10 years," I did not focus on the number of carryback periods a single NOL could have. *Norwest* addressed how a consolidated group of corporations computed the portion of its consolidated NOL attributable to bad debt losses. Whether that portion of the NOL had its own carryback period or instead extended the NOL's single carryback

period was unimportant to the resolution of the computational issue *Norwest* presented.

Finally, the majority claims that its "reading of the statute is supported by statements that were made in connection with . . . 1997 amendments to section 172."[9] Op. Ct. p. 13. Under the 1997 amendments, the portion of an NOL covered by the default carryback rule could be carried back only two years instead of the previous three. (The amendments also extended the carry*forward* period from 15 to 20 years.) The amendments, however, preserved the special carryback rules that allowed portions of an NOL to be carried back further than the default rule would allow.

The 1997 amendments had no bearing on the question of whether an NOL could have only one carryback period or more than one. Therefore, it is not surprising that most of the statements quoted by the majority do not favor its multiple carryback period theory over the single carryback period theory. For example, the House Ways and Means Committee report states that "the bill does not apply to NOLs arising from casualty losses of individual taxpayers." H.R. Rep. No. 105-148, at 499 (1997), *as reprinted in* 1997 U.S.C.C.A.N. 678, 893. The report of the Senate Finance Committee includes the same statement. S. Rep. No. 105-33, at 184 (1997), *reprinted in* 1997-4 C.B. (Vol. 2) 1067, 1264. The Conference Report describes the Senate amendment, which the conference agreement followed, as "preserv[ing] the 3-year carryback for NOLs of farmers and small businesses attributable to losses incurred in Presidentially declared disaster areas." H.R. Rep. No. 105-220, at 585 (1997) (Conf. Rep.), *reprinted in* 1997-4 C.B. (Vol. 2) 1467, 2055. And the General Explanation prepared by the Staff of the Joint Committee on Taxation states: "The Act does not apply to the carryback rules relating to REITs, specified liability losses, excess interest losses, and corporate capital losses." Staff of J. Comm. on Tax'n, 105th Cong., General Explanation of Tax Legislation Enacted in 1997 (1997 Bluebook), JCS-23-97, at 268 (J. Comm. Print 1997). I fail to see how those statements "support[]" the majority's "reading of the statute." That the 1997 amendments did not affect the carryback of amounts subject to special rules does not establish that those amounts had their own carryback periods.

---

[9] Curiously, while claiming "support[]" from the 1997 legislative history, the majority simultaneously suggests that it addresses the legislative history only as an accommodation "[f]or those who consider legislative history relevant." Op. Ct. p. 13.

The only statement the majority quotes that *could* support its reading of the statute is one by the Senate Finance Committee. The Committee expressed the belief that "a two-year carryback of NOLs [would be] sufficient to account for [natural] business cycles." S. Rep. No. 105-33, at 184, 1997-4 C.B. (Vol. 2) at 1264. In support of that belief, the committee noted that "many deductions allowed for tax purposes relate to future, rather than past, income streams and . . . certain deductions that do not relate to past income streams are granted special, longer *carryback periods* under present law (which are retained by the bill)." *Id.* (emphasis added). I view the committee's reference to "special, longer carryback periods" as akin to the dicta in the three cases the majority cites. The point the committee was making was that SLLs and similar amounts could continue to be carried back longer than the default rule would allow. Whether the additional years to which those amounts could be carried back defined separate "carryback periods" was not central to the committee's justification for the amendments.[10]

To review, the majority's position that an NOL can have multiple carryback periods if portions of that NOL can be carried back to different taxable years rests on (1) a purported "ordinary" meaning of "carryback period" not found in the sources on which the majority relies, (2) provisions of section 172 (that is, section 172(f)(5) and the analogous provisions for eligible losses and farming losses) that do not favor the majority's multiple carryback period theory over the alternative proposition that a single NOL has only one carryback period, (3) dicta from prior opinions of this Court and two appellate courts, and (4) a statement in a 1997 report by the Senate Finance Committee that should be viewed as akin to dicta.

On the other side of ledger, in support of the proposition that a single NOL continued to have just one carryback period even after it became possible for different portions of that NOL to be carried back to different years, we have (1) the clear implication of section 172(f)(6) and its predecessor, which the majority summarily dismisses,[11] and (2) the

---

[10] For similar reasons, I would not read much into the statement, included in each of the sources cited by the majority, that "[a] taxpayer may elect to forgo the carryback of *an NOL*" (rather than *all or part* of an NOL). H.R. Rep. No. 105-148, at 498, 1997 U.S.C.C.A.N. at 892 (emphasis added); S. Rep. No. 105-33, at 183, 1997-4 C.B. (Vol. 2) at 1263; H.R. Rep. No. 105-220, at 584, 1997-4 C.B. (Vol. 2) at 2054; 1997 Bluebook, at 267.

[11] After accusing me of "misread[ing] section 172(f)(6)," the majority opines: "[W]hatever inference might arise from the text of section 172(f)(6) does not suffice to

absence of any indication that the carryback waiver rule now provided in section 172(b)(3), which necessarily started out as an all-or-nothing rule, has not remained all-or-nothing, requiring the waiver of the carryback of the electing taxpayer's entire NOL. In my judgment, the balance tips decidedly in favor of the proposition that an NOL has only one carryback period so that a valid election under section 172(b)(3) necessarily relinquishes the carryback of the electing taxpayer's entire NOL.

II.    *Even if, After 1978, an NOL Could Have Multiple Carryback Periods, a Section 172(b)(3) Election Relinquishes the Carryback of the NOL in its Entirety.*

Even if I were to accept that, after 1978, a single NOL could have multiple carryback periods, I would still read the carryback waiver rule to require the relinquishment of any and all carryback periods to which the electing taxpayer might be entitled. The possibility of multiple carryback periods would allow us to interpret the singular noun "carryback period," as used in section 172(b)(3), to refer to more than one carryback period. 1 U.S.C. § 1. In that case, we would read the statute to say that any taxpayer entitled to *a* carryback period (or periods) under section 172(b)(1) can elect to relinquish *the* carryback period (or periods). What carryback period (or periods) can the taxpayer elect to relinquish? The use of the definite article tells us that the period (or periods) referred to are those previously referred to—that is, the carryback period (or periods) to which the electing taxpayer is entitled. *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) ("[G]rammer and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'" (quoting *The, Merriam-Webster's Collegiate Dictionary* (11th ed. 2005))). Therefore, even if I were to accept that an NOL can have more than one carryback period, I would still interpret section 172(b)(3) as allowing an election to relinquish any and all carryback periods to which the electing taxpayer is entitled.[12]

---

overcome the . . . textual indicators" that the majority views as supporting its position. Op. Ct. p. 20.

[12] The phrase "the . . . carryback period," as used in the second part of the operative sentence in section 172(b)(3), cannot be read to refer to whatever period or periods an electing taxpayer chooses to relinquish because those periods are not known until a taxpayer makes an election.

The majority claims that, if section 172(b)(1) establishes different carryback periods, it would "make[] little sense" to "[r]ead[] section 172(b)(3) as providing a taxpayer with an all or nothing election," particularly because Congress went "out of its way to give taxpayers additional choices" by allowing the elections provided in section 172(f)(6) and the analogous provisions for eligible losses and farming losses. Op. Ct. p. 15. Again, I am unpersuaded. Even if the different years to which portions of an NOL can be carried under section 172(b)(1) establish different carryback periods, it does not follow that those periods can be waived separately rather than collectively. The existence of multiple items in a group does not establish that differential, rather than uniform, treatment of those items should be allowed. And Congress's grant of *some* flexibility in the treatment of different portions of an NOL does not establish that Congress intended to allow the degree of flexibility Apache seeks.

The majority sees no "policy reason" to "tie the hands of taxpayers [with] multiple carryback periods under section 172(b)(1)." Op. Ct. p. 17. As the majority notes, Congress's enactment of the carryback waiver rule in 1976 showed that it was sympathetic to taxpayers whose loss carrybacks would have displaced other tax attributes that, if carried forward, might expire sooner. *See generally* Staff of J. Comm. on Tax'n, 94th Cong., General Explanation of the Tax Reform Act of 1976, JCS-33-76, at 189 (J. Comm. Print 1976). But an election to forgo the carryback altogether would preserve the tax attributes that would otherwise have been displaced. An all-or-nothing election would not be a "stingy . . . solution" to the problem Congress addressed in 1976. Op. Ct. pp. 17–18. The relevant policy question is whether a taxpayer with an NOL that includes an SLL should be able to have its cake and eat it, too, by carrying its SLL back ten years while forgoing the carryback of the rest of its NOL and thereby avoiding the displacement of other tax attributes generated in the more recent years. I agree that there may be no compelling reason to require the taxpayer to give up the carryback of its SLL as the price of preserving the tax attributes that would be displaced by the carryback of the rest of the taxpayer's NOL. But I am also unaware of a strong policy reason to allow selective carryback waivers. The stated reason for the carryback waiver in the first place would be achieved by either a selective or an all-or-nothing waiver election.

As the majority notes, Treasury Regulation § 1.172-13(c)(4) allowed a taxpayer with a *PLL* to elect to relinquish the carryback of the rest of its NOL while still carrying its PLL back ten years. The majority

asserts that, if Apache's SLL had consisted of deductions described in section 172(f)(1)(A) (related to product liability), "the Commissioner would be bound [by Treasury Regulation § 1.172-13] to permit Apache's carryback." Op. Ct. p. 17. But the majority seems to accept that, because Apache's SLL consists entirely of deductions described in section 172(f)(1)(B) (not related to product liability), the regulation does *not* bind the Commissioner to accept Apache's election.

Therefore, it is not clear to me what point the majority seeks to make in regard to the regulation. The majority writes that "there is no meaningful principle by which to justify treating product liability losses under section 172(f)(1)(A) differently, for purposes of the carryback period election, from other specified liability losses under section 172(f)(1)(B)." Op. Ct. p. 17. That may be true. Even so, the majority seems to accept that, while the regulation (in its view) would bind the Commissioner in regard to SLLs consisting of product liability deductions described in section 172(f)(1)(A), it does not bind the Commissioner in regard to SLLs, such as Apache's, consisting of deductions described in section 172(f)(1)(B) that are unrelated to product liability. Certainly, *we* are not bound to adopt the interpretation of section 172 reflected in Treasury Regulation § 1.172-13. As the Supreme Court has recently instructed us, we must exercise our own "independent judgment" in interpreting statutes. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

Therefore, even if I were to accept that a single NOL could have multiple carryback periods, I would remain unpersuaded by the majority's arguments that a taxpayer can elect under section 172(b)(3) to relinquish some carryback periods and not others. Instead, giving the definite article its normal meaning, I would read section 172(b)(3) to allow a taxpayer entitled to *a* carryback period (or periods) to elect to relinquish *the* carryback period (or periods) to which the taxpayer is entitled.

Whether or not a single NOL, after 1978, could have multiple carryback periods, Apache, in attempting to preserve the ten-year carryback of its SLL while relinquishing the two-year carryback of the rest of its NOL, sought to make an election that the law does not allow. Apache's election was thus invalid. Apache should be allowed to carry its SLLs back ten years but should also be required to carry the rest of its NOLs back two years. Both the Commissioner's and Apache's Motions should be denied.